658 F.2d 93
 Beatrice FINBERG, indiv. and on behalf of all others
similarly situated, Beverly Demcher, John Dzubak,
Patricia Dzubak, indiv. and on behalf of
all others similarly situated,
v.
Joseph A. SULLIVAN, indiv. and in his capacity as Sheriff,
Phila. County, and Americo V. Cortese, indiv. and in his
capacity as Prothonotary, Court of Common Pleas, Phila.
County, and Sterling Consumer Discount Company, a corporation.
Beatrice Finberg, on behalf of herself and others similarly
situated, Appellant.
 No. 79-1129.
 United States Court of Appeals,
Third Circuit.
 Argued Nov. 15, 1979.
Argued En Banc April 28, 1980.
Decided Oct. 27, 1980.
Opinion May 11, 1981.
 
 Bruce Fox (argued), Henry J. Sommer (argued), Community Legal Services, Inc. Philadelphia, Pa., for appellant.
 Sheldon L. Albert, City Sol., James M. Penny, Jr., Ralph J. Teti (argued), Asst. City Sols., City of Philadelphia Law Dept., Philadelphia, Pa., for appellee Joseph A. Sullivan.
 Jonathan Vipond, III, Kathleen M. Quinn, Howland W. Abramson (argued), Philadelphia, Pa., for appellee Americo V. Cortese.
 Before SEITZ, Chief Judge, and ALDISERT,* ADAMS, GIBBONS, ROSENN, WEIS, GARTH, HIGGINBOTHAM and SLOVITER, Circuit Judges.
 OPINION SUR DENIAL OF DEFENDANTS' MOTION FOR VACATION OF JUDGMENT
 ADAMS, Circuit Judge.
 
 
 1
 In an opinion filed October 27, 1980, 634 F.2d 50, this Court, sitting en banc, held that Pennsylvania's post-judgment garnishment procedures violated the due process clause of the Federal Constitution in two respects. First, the state procedures failed to provide a prompt post-seizure hearing at which claims of exemption could be adjudicated, and second, the state scheme did not require that the judgment debtor be informed of the existence of or procedure for claiming exemptions under state and federal law. We also held that the Pennsylvania rules violated the Supremacy Clause because they provided a judgment creditor with a means of circumventing the Social Security Act's exemption of benefits from attachment or garnishment. In addition to these rulings on the substantive issues in the case, we vacated the district court's denial of certification for the class of all judgment debtors who are subject to having personalty garnished in Pennsylvania and who have legal or equitable defenses to the execution, 461 F.Supp. 253 (D.C.).
 
 
 2
 Because our opinion invalidated provisions of state law, the defendants the sheriff and prothonotary of Philadelphia County had a right to appeal to the United States Supreme Court. See 28 U.S.C. § 1254(2). Initially indicating that they would follow this course, the defendants filed a notice of appeal to the Supreme Court. The defendants also moved this Court to stay its mandate, which ordinarily issues twenty-one days after the entry of judgment, see Fed.R.App.P. 41(a), in order that they could proceed in the United States Supreme Court before the directive issued that would strike down the invalid rules. Acting on this motion, and on others filed subsequently, this Court has not yet issued its mandate. The defendants, however, have abandoned their opportunity for Supreme Court review,[1] thereby removing the predicate for the stays of mandate that have issued. Nevertheless, the defendants now urge that the mandate should be stayed and the opinion of the Court withdrawn in light of action recently taken by the Pennsylvania Supreme Court.
 
 I.
 
 3
 Although it has never been a party to the present dispute, the Supreme Court of Pennsylvania, following issuance of this Court's opinion, promptly directed its Civil Procedural Rules Committee to prepare amendments to the state post-judgment garnishment procedure in order to bring it into compliance with the constitutional requirements of due process. On March 16, 1981, the State Supreme Court promulgated amended rules which, the defendants maintain, provide the constitutionally-required prompt hearing and notice of exemptions. Because the state has amended its rules, the defendants urge that it would be "superfluous" to allow the case to be remanded to the district court for possible issuance of declaratory relief. They contend that there is no longer a live controversy and that the proper course is for this Court to vacate the judgment entered on October 27, 1980, to withdraw its opinion, and to direct the district court to dismiss the case as moot.
 
 
 4
 In arguing for this conclusion, the defendants refer to various cases in which an appellate court vacated a lower court's judgment because the controversy became moot before the appellate tribunal could render a decision on the merits. This disposition has long been an element of Supreme Court practice,[2] although the Court retains discretion simply to dismiss the appeal in a moot case and to allow the lower court judgment to stand.[3] A similar discretion has not been accorded the federal courts of appeals, however. In Great Western Sugar Co. v. Nelson, 442 U.S. 92, 99 S.Ct. 2149, 60 L.Ed.2d 735 (1979), the Tenth Circuit had dismissed the appeal from the district court on grounds of mootness, but had allowed the district court judgment to stand. The Supreme Court, however, disapproved this disposition,[4] reaffirming the teaching of Duke Power Co. v. Greenwood County, 299 U.S. 259, 267, 57 S.Ct. 202, 205, 81 L.Ed. 178 (1936), that " '(w)here it appears upon appeal that the controversy has become entirely moot, it is the duty of the appellate court to set aside the decree below and to remand the cause with directions to dismiss.' " 442 U.S. at 93, 99 S.Ct. at 2149 (emphasis in original). Underlying these principles is the theory that removal of the lower court judgment "clears the path for future relitigation of the issues between the parties and eliminates a judgment, review of which was prevented through happenstance." United States v. Munsingwear, 340 U.S. 36, 40, 71 S.Ct. 104, 107, 95 L.Ed. 36 (1950).
 
 
 5
 Had the defendants here pursued their appeal of right to the Supreme Court, and had they convinced that Court that the changes in the Pennsylvania postjudgment garnishment procedures make the case moot, then the Supreme Court may well have exercised its discretion to vacate this Court's judgment of October 27, 1980, and remanded with directions to dismiss. The defendants urge that this Court, which retains control over the appeal until its mandate is issued,[5] should dispose of the case in the way that the Supreme Court would if the appeal were before it.
 
 
 6
 The fundamental problem with this recommendation is that it begs the central question on which the defendants' motion turns namely, whether the appeal is now moot.[6] In contrast to Munsingwear and Great Western Sugar, in which a government action[7] or the activities of the litigants[8] left no question concerning mootness, it is far from clear that Mrs. Finberg's controversy is no longer "live." In County of Los Angeles v. Davis, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979), the Supreme Court articulated a two-pronged test for mootness. A case may become moot if (1) the alleged violation has ceased, and there is no reasonable expectation that it will recur,[9] and (2) interim relief or events have "completely and irrevocably eradicated the effects of the alleged violation." The defendants maintain that the Pennsylvania Supreme Court's reform of the state garnishment rules undermines Mrs. Finberg's lawsuit. In effect, they argue that these amendments satisfy both branches of the Davis test: they remove the asserted constitutional violations, and provide assurance that any violations will not recur.
 
 
 7
 Pointing to a change in the law, however, does not demonstrate that the constitutional violations of which Mrs. Finberg complains have ceased and will never recur. The relevant issue with respect to this branch of the mootness test is whether the principle contended for by Mrs. Finberg the right of all post-judgment debtors to be heard promptly and to be notified of legal and equitable defenses is satisfied by the new rules. If it is, the case is moot; if not, the challenging party's interest is not destroyed by the amendment.[10]
 
 
 8
 Defendants have not persuaded us that the new rules satisfy all of the principles for which Mrs. Finberg contends. More specifically, our opinion of October 27, 1980, vacated the district court's denial of class certification and remanded on this point. Only after the district court determines whether or not to certify the class can it be ascertained whether the amended Pennsylvania rules adequately safeguard the due process rights of all parties to this controversy.[11] Moreover, even if the district court declines to certify the class, the question whether the new rules will secure a judgment creditor like Mrs. Finberg a prompt hearing on exemption claims may well turn on additional evidence as to how the new rules operate in practice. The uncertainty, on the present record, over whether the new rules adequately safeguard creditors in Mrs. Finberg's position distinguishes the case at bar from Hall v. Beals, 396 U.S. 45, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969), where the Supreme Court found moot a challenge to Colorado's six-month residency requirement for eligibility to vote. Before the Supreme Court decided the case, Colorado had shortened the residency requirement from six to two months. The Court determined the case to be moot because, inter alia, plaintiffs would have been eligible to vote had the new standard been in effect at the time of the election from which they were precluded.[12] By contrast, we cannot say with assurance that the new Pennsylvania procedures no longer "adversely affect" Mrs. Finberg's interests, see id. at 48, 90 S.Ct. at 201. And it is well-settled that a change in the law does not moot a case if the plaintiff's rights would have been violated under the new law. See Brockington v. Rhodes, 396 U.S. 41, 43, 90 S.Ct. 206, 207, 24 L.Ed.2d 209 (1969) (decided same day as Hall v. Beals ). Absent an inquiry into the operation of the new rules, we are reluctant to hold that the new Pennsylvania garnishment procedures fully satisfy the standard of due process as calculated in our opinion of October 27, 1980. This factual inquiry is properly addressed to the district court.
 
 
 9
 In light of the above considerations, we cannot agree with the defendants that Pennsylvania's amendments to its rules render this case moot.[13]
 
 II.
 
 10
 A somewhat different argument for vacation of our judgment focuses not on mootness but on an attempted conflation of two well-established principles: that an appellate court's decision is not final until it issues its mandate, and that a court should apply the law in effect at the time it renders its decision. It might be thought that from these premises it follows that this Court, having not yet issued its mandate, should re-examine its earlier judgment in light of the recent revisions to the Pennsylvania rules, since these constitute the law currently in effect. The flaw in this argument is that the law applied in this case is not the Pennsylvania post-judgment statute, but the standard of due process embodied in the United States Constitution. The governing constitutional standard has not varied since we entered judgment last October. Only the law under scrutiny the Pennsylvania rules dealing with garnishment has been amended, and this amendment was engendered by our decision that the old procedures did not comport with constitutional guarantees. The principle that a court should apply the law as it stands on the day of decision should not be misappropriated to allow an opinion expressing the applicable rule of constitutional law to be vacated whenever a legislative body or other governmental agency, responding to the court's opinion, alters a legal provision or course of conduct, to which the law had been applied.
 
 
 11
 Comparison of the present case with the Fourth Circuit's decision in Alphin v. Henson, 552 F.2d 1033 (4th Cir.), cert. denied, 434 U.S. 823, 98 S.Ct. 67, 54 L.Ed.2d 80 (1977), reinforces this point. There, the court of appeals, after denying attorneys' fees to victorious plaintiffs in an antitrust case, stayed issuance of its mandate to permit plaintiffs to apply for a writ of certiorari to the Supreme Court. Before the Supreme Court addressed the application, Congress enacted the Hart-Scott Rodino Antitrust Improvements Act of 1976, 15 U.S.C. § 26, amending the antitrust laws to provide awards of attorneys' fees to prevailing parties such as the Alphin plaintiffs. Inasmuch as the mandate of the Fourth Circuit had not yet issued when the Supreme Court denied the petition for certiorari, the court of appeals then re-examined, in light of the subsequent legislative action, its decision against awarding attorneys' fees, and reversed its earlier judgment. Alphin may well illustrate the appropriate response of a reviewing court when there is a change in the law of decision between the entry of judgment and the issuance of mandate. But see id. at 1036 (Field, J., dissenting). Alphin, however, does not suggest that a court should vacate its judgment when the rule it has reviewed is modified to conform to that judgment.
 
 III.
 
 12
 Because we have decided that the case is not moot and that no change in the governing law has occurred, precedents establishing the proper disposition of cases under these circumstances do not control our resolution of the defendants' motion for vacation of judgment. More pertinent to the motion under consideration is Main Road v. Aytch, 565 F.2d 54 (3d Cir. 1977). There a class action on behalf of prisoners confined in the Philadelphia prison system resulted in an opinion by this Court vacating the district court's denial of relief and remanding for promulgation of regulations governing prisoner press interviews and conferences. When the prisoners subsequently brought another class action challenging the newly promulgated regulations, the district court dismissed their complaint. On appeal, we agreed that the new regulations survived constitutional scrutiny, but held that a declaratory judgment, indicating that plaintiffs were entitled to prevail to the extent provided in the earlier opinion, was in order.
 
 
 13
 Many of the considerations that prompted us to direct entry of declaratory relief in Main Road apply as well in the present case. As in Main Road, the Court in the case at bar held that an established state procedure was unconstitutional and required amendment. Again as in Main Road, the judgment here has had beneficial consequences, for the Pennsylvania Supreme Court has already taken action to remedy the deficient garnishment procedure. Yet were this Court to grant the defendants' motion for vacation of judgment, we would remove the premise for the extensive reforms brought about by the Procedural Rules Committee of the Pennsylvania Supreme Court. Just as the Court in Main Road expressed concern that the absence of definitive judicial action would produce nothing binding upon the defendants and their successors, we likewise are troubled by the general point that vacation of judgment and withdrawal of an opinion in light of subsequent efforts to comply with the court's directive leaves a prevailing party no assurance against reinstatement, in whole or in part, of the practice or situation that the reviewing court had found objectionable. We, of course, have no reason to suspect that the Pennsylvania Supreme Court would withdraw its amended rules if we vacated our judgment of October 27, 1980. But the general point remains that vacation of judgment may allow a losing party to eradicate the precedential value of the judgment against it. Moreover, even if a losing party could be relied on to adhere to the Court's withdrawn opinion, the opinion's value in directing the conduct of other actors and setting down rules of law would be vitiated.[14] Duplicative litigation could be expected to follow.
 
 
 14
 This prospect is especially troubling in a case like the present where, as Judge Aldisert suggests in the appendix to his dissent, the post-judgment garnishment procedures of many states may well fall short of the due process standard articulated in the opinion of the Court. Although the defendants' motion does not present a request for equitable relief, the same considerations that prompted us in Main Road to direct entry of a declaratory judgment counsel against vacating the judgment of this Court entered last October 27.
 
 
 15
 For the foregoing reasons, it would be inappropriate to vacate the judgment entered on October 27, 1980. In declining defendants' motion, however, we do not wish to be understood as denigrating the exemplary efforts of the Supreme Court of Pennsylvania to amend its post-judgment garnishment rules to comply with the requirements of due process. To the contrary, the Pennsylvania court's swift response to the judgment sets a commendable example of cooperation between state and federal courts.
 
 
 16
 Defendants' motion for vacation of judgment and entry of an order directing the district court to dismiss this case as moot will be denied. Defendants' unopposed motion for withdrawal of the notice of appeal to the Supreme Court will be granted.
 
 ORDER
 
 17
 Upon consideration of defendant-appellees' motion for vacation of judgment and entry of an order directing the district court to dismiss this case as moot, filed March 26, 1981, and in accordance with the opinion of this Court,
 
 
 18
 It is Ordered that said motion be and the same is hereby denied.
 
 
 19
 Upon further consideration of defendant-appellees' motion for withdrawal of the notice of appeal to the Supreme Court, filed March 26, 1981, and in accordance with the opinion of this Court,
 
 
 20
 It is Ordered that said motion be and the same is hereby granted.
 
 
 21
 WEIS, Circuit Judge, dissenting.
 
 
 22
 The court sitting in banc found that the Pennsylvania Rules of Civil Procedure governing post-judgment garnishment were constitutionally lacking with respect to exemptions. Before the mandate of this court issued, the Pennsylvania Supreme Court amended the rules which, as I read them, now meet the objections cited by the majority. Indeed, the opinion sur denial of defendants' motion for vacation of judgment does not find fault with the newly drafted rules insofar as they apply to exemptions.
 
 
 23
 The majority opinion was restricted to the exemption claim issues brought before the court by Mrs. Finberg and did not address the merits of any other substantive matters raised by the uncertified class. Because her contention that the Pennsylvania rules did not provide due process lost its validity with the enactment of the amendments, Mrs. Finberg no longer has a justiciable claim. As to her, the matter is moot, and the exemption issue is, therefore, no longer a proper basis upon which to certify a class.
 
 
 24
 This court must review the controversy before it in light of the rules as they now exist, not as they were when the suit commenced in the district court, or when the appeal was first filed. Hall v. Beals, 396 U.S. 45, 48, 90 S.Ct. 200, 201, 24 L.Ed.2d 214 (1969); United States v. The Schooner Peggy, 5 U.S. (1 Cranch) 103, 2 L.Ed. 49 (1801). In Hall, the Supreme Court held that a controversy was moot because the Colorado statute under attack was amended before the appeal was determined. There, as here, the constitutional standard had not changed and there, as here, the enactments said to contravene the Constitution had been revised so that the conflict no longer existed. The Court noted that as far as the appellants were concerned, "nothing in the Colorado legislative scheme as now written adversely affects either their present interests, or their interests at the time this litigation was commenced." Id. To the same effect, see Kremens v. Bartley, 431 U.S. 119, 128-29, 97 S.Ct. 1709, 1714-15, 52 L.Ed.2d 184 (1977). The same result should obtain here.
 
 
 25
 In promulgating procedural rules, the Pennsylvania Supreme Court acts in its legislative capacity, see Supreme Court of Virginia v. Consumers Union of the United States, Inc., 446 U.S. 719, 731, 100 S.Ct. 1967, 1974, 64 L.Ed.2d 641 (1980), and its enactments have the force of statutes, 42 Pa.Cons.Stat.Ann. § 1722(b) (Purdon 1980). As presently written, the rules require adequate notice of exemptions and prompt disposition of claims invoking them, two conditions mandated by the majority opinion. "The case has therefore lost its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law." Hall v. Beals, supra, 396 U.S. at 48, 90 S.Ct. at 201.
 
 
 26
 The fact that the change in the rules occurred after the majority's opinion was filed does not remove the basis for a declaration of mootness. This court unquestionably may change its judgment before the mandate becomes effective, Alphin v. Henson, 552 F.2d 1033, 1035 (4th Cir.), cert. denied, 434 U.S. 823, 98 S.Ct. 67, 54 L.Ed.2d 80 (1977), and, indeed, in one instance, recalled its mandate years after it had issued. American Iron & Steel Institute v. EPA, 560 F.2d 589 (3d Cir. 1977), cert. denied, 435 U.S. 914, 98 S.Ct. 1467, 55 L.Ed.2d 505 (1978). The fact that the Pennsylvania rules were amended at such a late stage in the appellate proceedings, therefore, does not deprive this court of the power to act.
 
 
 27
 It is asserted that Mrs. Finberg's case is not moot because other members of a class that might be certified could assert that the amended rules still deny due process when defenses to post-judgment proceedings other than exemptions are raised. That, however, is not relevant to Mrs. Finberg's claim the only one that was the subject of the majority opinion. As the Court observed in United States Parole Commission v. Geraghty, 445 U.S. 388, 401, 100 S.Ct. 1202, 1211, 63 L.Ed.2d 479 (1980) and Deposit Guaranty National Bank v. Roper, 445 U.S. 326, 332-33, 100 S.Ct. 1166, 1170-71, 63 L.Ed.2d 427 (1980), for Article III mootness purposes, we must approach cases on an issue by issue basis. Mootness on one issue does not moot all, and, conversely, the continued viability of some issues does not breathe life into those that are no longer justiciable.
 
 
 28
 When Mrs. Finberg's substantive claim is isolated, it becomes clear that both aspects of the test for mootness are satisfied. County of Los Angeles v. Davis, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979). The alleged violation of the rights of debtors claiming exemptions has been remedied, and there is no reason to suspect that the new rules will be revoked. Thus, whatever might remain of the uncertified class claims, none of the Finberg substantive contentions survive the promulgation of the amended rules. The possibility that other judgment debtors may incur different alleged violations is of no consequence. While it is true that the existence of their claims precludes an order withdrawing the majority opinion in its entirety, that part deciding a constitutional issue that is now moot should be vacated. Kremens v. Bartley, supra, 431 U.S. at 137, 97 S.Ct. at 1719.
 
 
 29
 The majority also expresses some reluctance to vacate its opinion because precedential value will be lost. But no matter how thoughtful or learned they may be, we are not authorized to issue advisory opinions, and as Mrs. Finberg's claim now stands, the majority opinion falls into that category.
 
 
 30
 Main Road v. Aytch, 565 F.2d 54 (3d Cir. 1977), is not pertinent except insofar as it demonstrates why a contrary result should be reached here. In that case the informal rules were promulgated by the defendant, a party to the suit, shortly after this court remanded to the district court for that very purpose. Id. at 56; Main Road v. Aytch, 522 F.2d 1080, 1090 (3d Cir. 1975). Moreover, the proposed regulations in Main Road were adopted by an administrative agency whose policies tend to change with each shift in supervisory personnel. Here, on the other hand, the rules are the creation of a governmental body whose policy reflects an institutional permanence equivalent to our own indeed, a court whose history antedates ours by more than two hundred years. It bears repeating that the state Supreme Court is not a party to this case and the defendants had no power to change the rules. Therefore, it cannot be said that this is a case of "voluntary cessation of allegedly illegal conduct" where the defendants are "free to return to (their) old ways." United States v. W. T. Grant Co., 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953).
 
 
 31
 The vigorous, energetic, and prompt efforts on the part of the Pennsylvania Supreme Court and its Procedural Rules Committee to amend its rules to comply with the majority opinion call for commendation. The court and its committee responded quickly to the majority decision which caused substantial disruption to long established commercial practices in the state. I have not the slightest concern that so responsible a court will withdraw its changes should we vacate our opinion, and the majority does not disagree with me on this point.
 
 
 32
 It does seem to me that in addition to the strong legal basis for declaring Mrs. Finberg's claim to be moot, respect for a sister court calls for that course of action. Courtesy and precedent in this situation go hand in hand.
 
 
 33
 I would vacate the judgment of the court, withdraw the opinions, and remand to the district court for consideration of class certification on such issues as might remain.
 
 
 
 *
 Although Judge Aldisert is a consultant to the Pennsylvania Procedural Rules Committee, he did not participate in the drafting of the Pennsylvania rules of attachment execution or the 1981 amendments thereto. Nevertheless, he has elected not to participate in the consideration of these motions
 
 
 [1]
 Supreme Court Rules 11, 12 require that a notice of appeal be filed with the court of appeals and the appeal docketed with the Supreme Court within 90 days of the entry of judgment. Since we entered judgment on October 27, 1980, the 90-day period extended to January 26, 1981. Although defendants filed a timely notice of appeal with this Court, they did not docket their appeal with the Supreme Court. Instead, on January 15, 1981, they applied pursuant to Supreme Court rule 12.2 for a 60-day enlargement of time to docket their appeal. Justice Brennan, Circuit Justice for the Third Circuit, granted this application on January 19, 1981. Defendants did not, however, docket their appeal within the 60 days, thus losing their opportunity to seek review in the Supreme Court. Defendants now petition this Court to accept withdrawal of their notice of appeal to the Supreme Court
 
 
 [2]
 See, e. g., United States v. Munsingwear, 340 U.S. 36, 39, 71 S.Ct. 104, 106, 95 L.Ed. 36 (1950) ("The established practice of the Court in dealing with a civil case from a court in the federal system which has become moot while on its way here or pending our decision is to reverse or vacate the judgment below and remand with a direction to dismiss."). Although the Court in Munsingwear could cite over 30 cases in which it had reversed or vacated lower court judgments in controversies that had become moot, see 340 U.S. at 39 n.2, 71 S.Ct. at 106 n.2, this was not always the standard disposition. Prior to 1919, the Court often dismissed moot appeals while allowing the lower court judgment to stand. See Comment, Disposition of Moot Cases by the United States Supreme Court, 23 U.Chi.L.Rev. 77, 79 & nn.10, 16 (1955) (citing cases). For the most part, the Court reversed or vacated only where allowing the lower court judgment to stand might work an injustice, as in the case of collusive actions, see Lord v. Veazie, 49 U.S. (8 How.) 251, 12 L.Ed. 1067 (1850), or injunctions, see New Orleans Flour Inspectors v. Glover, 161 U.S. 101, 16 S.Ct. 492, 40 L.Ed. 632 (1896). The turning point in the Supreme Court practice is generally taken to be Board of Pub. Util. Comm'rs v. Compania Gen. de Tabacos, 249 U.S. 425, 39 S.Ct. 332, 63 L.Ed. 687 (1919), where the Court identified vacation of judgment and remand with instructions to dismiss as the "proper course" in cases that have become moot. Although the Court did not explain its preference for this disposition, elimination of the lower court judgment has since been rationalized as a way to preclude possible unjust or unforeseen effects, see Comment, supra, at 83, and collateral estoppel, see Note, Cases Moot on Appeal: A Limit on the Judicial Power, 103 U.Pa.L.Rev. 772, 794 (1955); but see Scott, Collateral Estoppel by Judgment, 56 Harv.L.Rev. 1, 15-16 (1942) (no collateral estoppel will flow from a decree moot on appeal)
 
 
 [3]
 See, e. g., Socialist Labor Party v. Gilligan, 406 U.S. 583, 92 S.Ct. 1716, 32 L.Ed.2d 317 (1972) (dismissing appeal but allowing judgment of 3-judge court to stand where all but one of plaintiffs' claims were rendered moot before Supreme Court decision, and remaining claim was not justiciable); United States v. Munsingwear, 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950) (noting that "established practice" is for Supreme Court to vacate lower court judgment in cases that have become moot, but allowing judgment in case before it to stand); Walling v. Reuter, Inc., 321 U.S. 671, 677, 64 S.Ct. 826, 829, 88 L.Ed. 1001 (1943) (Supreme Court free to dispose of moot cases as "justice may require"); Comment, supra note 2, at 81-82
 
 
 [4]
 The decision in Great Western Sugar Co. was foreshadowed by the Supreme Court's disposition of New Left Educ. Project v. Board of Regents, 414 U.S. 807, 94 S.Ct. 118, 38 L.Ed.2d 43 (1973). There the Fifth Circuit had dismissed an appeal as moot when the defendant Board of Regents had complied with declaratory and injunctive relief ordered by the district court. The court of appeals, however, left the district court judgment intact. 472 F.2d 218, 220-22 (5th Cir. 1973). The Supreme Court summarily vacated the Fifth Circuit's judgment and remanded the matter to the district court with instructions to dismiss the case as moot
 Although defendants rely heavily on New Left, that case's procedural posture helps explain its result and distinguishes it from the present controversy. Because the controversy in New Left became moot before the Fifth Circuit considered the case, simple dismissal of the appeal by the court would have allowed the district court judgment to stand without the benefit of appellate review. This disposition would have circumvented the principle that all final orders of the district court are reviewable in the court of appeals, see 28 U.S.C. § 1254. See also Bagby v. Beal, 606 F.2d 411, 413-14 (3d Cir. 1980) (court vacated district court judgment where case had become moot before court of appeals rendered decision on the merits). In the present case, however, this Court has already ruled on the merits of Mrs. Finberg's challenge to the Pennsylvania garnishment procedure. Even if the case were to become moot now, failure to vacate our judgment would not have the effect which New Left seems to preclude, namely, allowing an unreviewed judgment to stand where review on the merits would be statutorily mandated had the controversy not become moot. The present posture of Mrs. Finberg's case is more analogous to the situation in the Supreme Court when that body is presented with a moot case, than it is to the Fifth Circuit's situation in New Left. Because the Supreme Court's review of appellate court decisions is, for the most part, discretionary, the Court's failure to vacate judgment in a moot case ordinarily will not deprive a losing part of a review on the merits to which it is entitled. Accordingly, the Supreme Court is not obligated to vacate lower court judgments in cases that become moot, although it most frequently exercises its discretion to do so.
 
 
 [5]
 See Alphin v. Henson, 552 F.2d 1033 (4th Cir. 1977); Gradsky v. United States, 376 F.2d 993 (5th Cir. 1967). The appellate court's continuing control over a judgment until the mandate has issued would appear to be a corollary of the "mandate rule": The mandate of a federal appellate court "establishes the law binding further action in the litigation by another body subject to its authority." City of Cleveland v. Federal Power Comm'n, 561 F.2d 344, 346 (D.C. Cir. 1977). Because the obligations of the parties are not fixed until the Court's mandate issues, it would appear to follow that the Court retains authority to amend its judgment until it issues its mandate. Nonetheless, the extent of a Court's supervision of a case between entry of judgment and issuance of mandate should not be overstated. Issuance of mandate is largely a ministerial function, and follows automatically 21 days after entry of judgment, unless stayed. See Fed.R.App.P. 41(a). For most purposes, the entry of judgment, rather than the issuance of mandate, marks the effective end to a controversy on appeal. Indeed, the mandate of the Court ordinarily consists of nothing more than a certified copy of the judgment and a copy of the opinion of the Court, along with directions as to costs. See id. Moreover, even when formal mandates were more common than they are today, it was recognized that the Court's opinion should be consulted to ascertain the intent of the mandate. See In re Sanford Fork & Tool Co., 160 U.S. 247, 255, 16 S.Ct. 291, 293, 40 L.Ed. 414 (1895); Federal Trade Comm'n v. Standard Educ. Soc'y, 148 F.2d 931, 932 (2d Cir. 1945); Miller v. United States, 173 F.2d 922 (6th Cir. 1949)
 
 
 [6]
 A different problem in this case arises because the purportedly mooting event the Pennsylvania Supreme Court's promulgation on March 16, 1981 of new pre-judgment garnishment rules would have occurred after the issuance of our mandate if defendants had not first obtained a stay of the mandate in order to prosecute an appeal to the Supreme Court which they never perfected. No such complication characterized Munsingwear or Great Western Sugar. We fear that granting defendants' motion for vacation of judgment might have the undesirable consequence in future cases of encouraging the losing party on appeal to seek to delay the issuance of the mandate and in the interim bring about, for the sole purpose of evading the unfavorable decision, events which moot the case
 The only case brought to our attention in which a court, after entry of judgment but prior to issuance of the mandate, withdrew its judgment is Alphin v. Henson, 552 F.2d 1033 (4th Cir.), cert. denied, 434 U.S. 823, 98 S.Ct. 67, 54 L.Ed.2d 80 (1977), discussed at text infra. That case, however, did not involve events which mooted the controversy; instead, a change in the governing law required the court to reconsider its earlier decision.
 
 
 [7]
 In Munsingwear, the United States sought to enjoin purported violations of regulations fixing the maximum price of commodities which defendants sold. The district court found in favor of defendants, and, while the appeal was pending to the Eighth Circuit, the commodity involved was decontrolled, thereby mooting the case. See United States v. Munsingwear, 340 U.S. at 37, 71 S.Ct. at 105
 
 
 [8]
 In Great Western Sugar, the district court ordered defendant employer to arbitrate its discharge of the plaintiff. Before the appeal to the Tenth Circuit was decided, the arbitration was completed, thereby mooting the case. See Great Western Sugar Co. v. Nelson, 442 U.S. at 92, 99 S.Ct. at 2149
 Kremens v. Bartley, 431 U.S. 119, 97 S.Ct. 1709, 52 L.Ed.2d 184 (1977), affords another example of how events intervening between judgment of the lower court and decision by the Supreme Court can moot a controversy. In Kremens, a three-judge court struck down as violative of due process certain provisions of the Pennsylvania Mental Health and Mental Retardation Act of 1966 which allowed parents to commit children under 18 years of age to a mental health facility. See Bartley v. Kremens, 402 F.Supp. 1039 (E.D.Pa.1975). After the decision of the three-judge court but before disposition by the Supreme Court, Pennsylvania amended the Act to provide that any person 14 years of age or over may admit himself, but his parents may not do so. Since each of the named plaintiffs was older than 14, "enactment of the statute clearly moot(ed) the claims" of these parties. 431 U.S. at 129, 97 S.Ct. at 1715. Although the new statute did not moot the claims of unnamed juveniles who were less than 14 years old and members of the class the three-judge court had certified, see id. at 130-31, 97 S.Ct. at 1715-16, the Court nonetheless vacated the judgment of the lower court and remanded for reconsideration of the class definition.
 
 
 [9]
 This prong derives from the Supreme Court's traditional recognition that termination of a challenged practice ordinarily does not, in itself, suffice to render a case moot. As the Court explained in United States v. W. T. Grant Co., 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953): "(V)oluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i. e., does not make the case moot.... A controversy may remain to be settled in such circumstances, ... e. g., a dispute over the legality of the challenged practices.... The defendant is free to return to his old ways. This, together with a public interest in having the legality of the practices settled, militates against a mootness conclusion." The Court went on to say that a case might nonetheless be considered moot if there were no reasonable expectation that the harm would be repeated, but warned that a defendant's disclaimer of intent to revive the practice does not render the case moot
 
 
 [10]
 See generally Note, Mootness on Appeal in the Supreme Court, 83 Harv.L.Rev. 1672, 1678 (1970)
 
 
 [11]
 For example, if the district court certifies the class of all judgment debtors who have either legal or equitable defenses to garnishment of their personal property, it would have to consider whether the amended rules provide adequate hearings for debtors' assertion of all defenses. On their face, the new rules appear to provide a prompt hearing only for debtors with exemption claims. Moreover, because our opinion of October 27, 1980, addressed the hearing requirement in the context of Mrs. Finberg's claim that her Social Security benefits were exempt from garnishment, the opinion will likely prove of only limited guidance for the district court's resolution of the rights of other class members
 
 
 [12]
 The Supreme Court asserted two additional, and apparently independently adequate, grounds for finding the case moot: (1) the 1968 election, for which plaintiffs had sought to register, had already occurred; and (2) by the time of the Court's decision, plaintiffs satisfied the six-month residency requirement. Hall v. Beals, 396 U.S. at 46, 90 S.Ct. at 200
 
 
 [13]
 Other factors also counsel hesitation in deciding that the case at bar is now moot. Because the Supreme Court of Pennsylvania is not a party in the present case, its emendation of the post-judgment garnishment rules arguably might be characterized as a "voluntary cessation," within the meaning of United States v. W. T. Grant Co., 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953), of at least some of the practices disapproved in our opinion of October 27, 1980. The case accordingly might not be moot for the reasons stated in W. T. Grant Co., see note 10 supra. Cf. Rogin v. Bensalem Township, 616 F.2d 680, 684 (3d Cir. 1980) (state court adjudication of state law claims similar to those raised in federal lawsuit does not moot federal law claims)
 Inasmuch as defendants, in failing to establish the cessation of the asserted constitutional violations, have not satisfied the first of the Davis criteria for mootness, we need not consider whether the second Davis requirement the complete and irrevocable eradication of the effects of the violation is met.
 
 
 [14]
 Even if a decision is vacated, however, the force of its reasoning remains, and the opinion of the Court may influence resolution of future disputes. For example, a divided en banc Court held in Alton v. Alton, 207 F.2d 667 (3d Cir. 1953), that in the absence of a showing that the wife was domiciled in the Virgin Islands, a court of insular jurisdiction lacked jurisdiction to grant a divorce, even though the husband entered a general appearance and did not contest the action. Before the case was argued to the Supreme Court, however, the husband had obtained a divorce in Connecticut. The Supreme Court then ordered that "The judgment of the Court of Appeals is vacated and the cause is remanded to the District Court with directions to vacate its judgment and to dismiss the proceeding upon the ground that the cause is moot." Alton v. Alton, 347 U.S. 610, 611, 74 S.Ct. 736, 98 L.Ed. 987 (1954). One year later, the jurisdictional issue concerning the District Court of the Virgin Islands was again presented to the Third Circuit. The Court elected to follow its earlier opinion in Alton v. Alton. After noting that the decision had been vacated, the Court stated: "That decision must govern this. While individual members of the Court have not modified their views as set out in the opinions of that case, all recognize the authority of a decision rendered after due consideration by the Court en banc." Granville-Smith v. Granville-Smith, 214 F.2d 820 (3d Cir. 1954) (en banc). See also County of Los Angeles v. Davis, 440 U.S. 625, 646 n.10, 99 S.Ct. 1379, 1391 n.10, 59 L.Ed.2d 642 (Powell, J., dissenting)