John MOMBRO and Rachel Adams,
a/k/a Rachel Mombro, Plaintiffs,

v.

LOUIS CAPANO & SONS, INC., t/a
Cavalier Country Club Apartments
and Anne McDonald, Defendants.

Civ. A. No. 81–100.

United States District Court,
D. Delaware.

Nov. 30, 1981.

Douglas A. Shachtman, Wilmington, Del., for plaintiffs.

George H. Seitz, III, Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del., for defendants.

## OPINION

STAPLETON, District Judge:

Until October 2, 1980, John Mombro and Rachel Adams resided in the Cavalier Country Club Apartments in Newark, Delaware. On that date, following a summary repossession proceeding in Justice of the Peace Court, the landlord changed the locks on their apartment. Mombro and Adams were unable to enter their apartment or to remove their property from the premises. The following day, building manager Anne McDonald told the plaintiffs that the landlord would return their possessions only after they had paid the back rent which Mombro and Adams owed and storage charges of $11 per day. On January 19, 1981 the plaintiffs called their former landlord to recover their property; they then learned that all of their household belongings had been sold.

On March 11, 1981 Mombro and Adams filed this action alleging a deprivation of property without due process of law, in violation of the Fourteenth Amendment, finding a cause of action in 42 U.S.C. § 1983 and federal court jurisdiction in 28 U.S.C. § 1343(3) and (4). The complaint also asserts State law claims for fraud, conversion, violation of the State's due process clause, and ouster of a tenant without a valid court order.

Now before the Court is Defendants' Motion to Dismiss for failure to state a claim, F.R.C.P. 12(b)(6), and Plaintiffs' Motion for Partial Summary Judgment on the consti-

tutionality of 25 Del.C. § 5715(d), the statute on which the defendants rely to authorize their seizure of Mombro and Adams's property.

## I. FACTUAL BACKGROUND.

### A. *The Eviction Proceedings*

John Mombro and his wife Rachel Adams resided at the Cavalier Country Club Apartments from May 1, 1977 until their eviction in October 1980. Delaware law permits a landlord to sue for repossession of a leasehold for, among other things, non-payment of rent. 25 Del.C. §§ 5701, *et seq.* Defendant Anne McDonald commenced such a proceeding in Justice of the Peace Court No. 9, sitting in Middletown, Delaware, on September 11, 1980. McDonald alleged that John Mombro had failed to pay rent for the month of August. As a remedy, she sought $295 in back rent, additional rent up to the date of repossession, possession of the apartment, and costs. Mombro did not appear to contest the action, and the court entered a default judgment on September 30, 1980, awarding the landlord $590 for two months rent, possession, and court costs of $16. On October 1, 1980, plaintiffs paid $311. Defendants retained security deposits on the apartment and a fire extinguisher amounting to $260.

On October 2, 1980, the landlord changed the locks on the apartment and evicted Mombro and Adams. On October 3, the plaintiffs spoke with Anne McDonald, who told them that the landlord would retain control over the personal belongings left in the apartment until the plaintiffs paid all of the money they owed to the landlord as well as storage charges of $11 per day. McDonald did not tell Mombro and Adams that after thirty days their property would be sold. Based upon that conversation, the plaintiffs relied upon the landlord to store their possessions until they could pay the back rent and accrued charges.

More than three months later, on January 19, 1981, plaintiffs called the Cavalier Country Club Apartments to regain the property held in storage. At that time they learned that the landlord had sold their belongings, which plaintiffs value at over $22,000.

### B. *The Statute*

The Delaware General Assembly enacted the current Landlord-Tenant Code in 1972; its avowed purpose was:

(1) to simplify and clarify the law governing landlord and tenant relationships;

(2) to encourage landlords and tenants to maintain and to improve the quality of housing in the state; and

(3) to revise and modernize the law of landlord and tenant to serve more realistically the needs of modern day society.

58 Del. Laws c. 472, § 1 (June 29, 1972). To solve the problems of the landlord involuntarily saddled with the property of an evicted tenant, the Code included Section 5715(d):

If prior to or upon the tenant's removal [in the course of a summary repossession proceeding] from said premises, the tenant fails to remove his property or possessions, the landlord shall have the right to remove and store same at tenant's expense for up to a period of 30 days. If at the end of such period the tenant has failed to claim said property and to reimburse the landlord for the expense of removal and storage in a reasonable amount, such property shall be deemed abandoned and may be disposed of by the landlord without further notice or obligation to the tenant.

Section 5715(d) was not intended as a means of debt collection. Indeed, in the same act which created Section 5715(d), the General Assembly abolished the Landlord Distress Law (formerly 25 Del.C. §§ 5501–5706). The Code now permits distraint of rent only by specific agreement of parties to a commercial lease. 25 Del.C. § 6301(a). Its evident purpose was to place limitation on the landlord's duty to hold property for a tenant.

At common law:

Chattels owned by the tenant that are left on the leased property may interfere with the landlord's full use of the leased property. He can recover from the ten-

ant the cost of removing such chattels and storing them in some other location, and for any other damage he sustains. *The tenant, however, does not lose his ownership of his chattels unless his conduct amounts to abandonment of them.* *Restatement (2d)*, Property § 12.3. *See also*, R. Brown, *The Law of Personal Property*, § 1.6 (3d ed. 1975); *Warrington v. Hignutt*, 31 A.2d 480, 482–83 (Del.Super. 1943); 52A *C.J.S.*, Landlord & Tenant, § 790 at 220. Abandonment at common law requires an intent to relinquish a known right of interest. 1 *C.J.S.*, Abandonment § 4. The effect of Section 5715(d) is to presume abandonment from thirty days absence.

## II. JURISDICTION.

### A. *Constitutional Clauses.*

■ Plaintiffs allege a violation of their rights under the Due Process Clause of the Fourteenth Amendment. On its face, this allegation is sufficient to establish jurisdiction under 28 U.S.C. § 1343(3). *See Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979). Before this Court may entertain State law claims under its pendent jurisdiction, I must consider whether this constitutional claim is "substantial." *Hagans v. Lavine*, 415 U.S. 528, 536–38, 94 S.Ct. 1372, 1378–79, 39 L.Ed.2d 577 (1974).

■ Although a full discussion of the constitutionality of Section 5715(d) is not appropriate here, I find substantial grounds to question its compatibility with the Due Process Clause. In their motion to dismiss for failure to state a claim under Section 1983, the defendants argue that Mombro and Adams have failed to show that the loss of their property is attributable to "state action." Defendants principally rely upon the Supreme Court's 1978 decision in *Flagg Brothers v. Brooks*, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185.

*Flagg Brothers* held that the New York State warehouseman's lien law, a provision of New York's version of the Uniform Commercial Code, did not constitute State action in violation of the Fourteenth Amendment. The Court in *Flagg Brothers* distinguished a long line of cases involving creditors' remedies because "[i]n each of those cases a government official participated in the physical deprivation of what had concededly been the constitutional plaintiff's property under state law before the deprivation occurred." 436 U.S. note 10 at 160–61, 98 S.Ct. note 10 at 1735–36. *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Mitchell v. W. T. Grant*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974) and *North Georgia Finishing Co. v. Di-Chem*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975) each involved approval of and involvement in a prejudgment seizure of a debtor's property by a ministerial officer of a State court. In *North Georgia Finishing*, for example, "[t]he creditor . . . had not simply sought to pursue the collection of his debt by private means permissible under Georgia law; he had invoked the authority of the Georgia court. . . ." *Flagg Brothers v. Brooks, supra*, 436 U.S. note 10 at 161, 98 S.Ct. note 10 at 1736.

The creditor's remedy in *Flagg Brothers*, by contrast, was entirely self-executing. Absent contractual agreement to the contrary, the U.C.C. provision was simply incorporated into the lease of storage space, and permitted the warehouseman to sell the lessee's property after notice, without any need for recourse to the State judiciary. Deprivations as a result of this contractual arrangement were not "a result of some established state procedure." *Parratt v. Taylor*, 451 U.S. 527, 543, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981).

■ The operation of Section 5715(d), upon which the defendants purport to rely to authorize their seizure and sale of plaintiffs' goods, however, is predicated upon a State court judgment and the issuance of a warrant of removal. Indeed, it was a State court which put defendants in possession of plaintiffs' personal property. Absent this "state action," the defendants would have had no authority to remove the tenant's

property, or to sell it.[1] Consequently, there is a "close nexus" between action of the State through its judicial branch and the deprivation of property of which Mombro and Adams complain. *See Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 350–51, 95 S.Ct. 449, 453–54, 42 L.Ed.2d 477 (1974); *Fitzgerald v. Mountain Laurel Racing, Inc.*, 607 F.2d 589, 600 (3d Cir. 1979).[2]

It also appears that plaintiffs' claim that Section 5715(d) provides constitutionally inadequate procedural safeguards is not insubstantial.[3] Briefly the private interest which Section 5715(d) threatens to impair is considerable. It irrebuttably presumes goods to be "abandoned" which may comprise all of a tenant's worldly possessions. *See Sniadach v. Family Finance Corp., supra, Fuentes v. Shevin, supra.* Moreover, the risk of the erroneous deprivation of these goods appears high, since the State judicial proceedings focuses on the existence of a debt to the landlord. A tenant who has completely repaid any back rent, however, may still lose his or her property if he or she, for any reason, fails to claim it and pay storage charges within thirty days. The law does not present the tenant with an opportunity to contest disputed storage charges, or a judicial determination of their reasonableness. *Compare* 6 Del.C. § 7–209. *Cf. Parks v. "Mr. Ford"*, 556 F.2d 132, 161 (3d Cir. 1977).

Section 5715(d) also does not afford the tenant notice that all of his or her property is at risk if it is not claimed within thirty days. *Cf. Gray v. Whitmore*, 17 Cal.App.3d 1, 94 Cal.Rptr. 904 (1 Div.App. 1971) (California statute requires published notice and landlord must retain balance not required to satisfy judgment for tenant's benefit). Even without an affirmative misrepresentation by the landlord, the statute leaves open the possibility that a tenant may "abandon" property in the mistaken belief that his or her landlord will retain the goods until claimed. Nor would such a notice requirement appear to impede the objective of the statute; if anything, it would encourage tenants to remove their belongings more quickly, thereby freeing space for alternative use. Finally, procedures such as notice of the thirty day limitation on storage would not appear to impose a significant fiscal or administrative burden on the State, and would be very likely to prevent erroneous deprivations under Section 5715(d).

■ Although the plaintiffs had an opportunity to resist the eviction proceedings and failed to do so, that opportunity for a "day in court" is not fatal to their due process claim. *See Finberg v. Sullivan*, 634 F.2d 50, 56 (3d Cir. 1980), *rehearing on other grounds*, 658 F.2d 93 (3d Cir. 1981) (en banc). In *Finberg*, the Third Circuit found that Pennsylvania post-judgment garnishment procedure failed to provide adequate protection to the judgment debtor. The court noted that the adjudication of the underlying debt did not pass on to the creditor "title to any particular item of ... property." 634 F.2d at 58. Similarly, in this case the Justice of the Peace Court judgment does not give the landlord a lien on the tenant's property from which to satisfy the claim for back rent. Rather, it sets in motion an eviction process. The

---

**1.** The lease may expressly permit the owner of a commercial rental unit to hold the tenant's goods for payment of rent. 25 Del.C. § 6301, *et seq.* The landlord may sell the tenant's property if the tenant fails to satisfy the lien, but only upon notice. In such cases the landlord must return the balance of the property to the tenant.

**2.** A claim under Section 1983 must also allege action "under color of state law." Defendants admit they acted in reliance on Section 5715(d). This element is satisfied, even if that reliance is determined to be misplaced.

**3.** *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) instructs the Court in situations of this kind to weigh:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the [State's] interest, including the function involved and the fiscal and administrative burdens that the additional procedural requirements would entail.

424 U.S. at 335, 96 S.Ct. at 903.

landlord's right to sell the tenant's property, or to dispose of it in any other manner, regardless of how great or small the debt for back rent may be, depends upon: (1) whether the tenant has "failed" to remove the property given an opportunity to do so; (2) whether the storage charges claimed are "reasonable"; and (3) whether the tenant has, in fact, "claimed" the property within the thirty days provided by statute. Consequently, "[a] debtor might still defeat that right with any number of defenses not adjudicated in the action on the merits." 634 F.2d at 58.

I need not, and do not, decide the constitutional issued posed, however. It is sufficient that they are substantial, and not merely a sham designed to confer federal jurisdiction over State law issues.

### B. *Pendent Claims.*

■■ Federal courts may exercise jurisdiction over State law claims arising from "a common nucleus of operative fact", *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); *Evans v. Buchanan,* 468 F.Supp. 944, 956 (D.Del.1979), when to do so would promote "judicial economy, convenience and fairness to litigants." *Hagans v. Lavine, supra,* 415 U.S. at 545, 94 S.Ct. at 1383; *United Mine Workers v. Gibbs, supra. See generally* 13 Wright & Miller, *Federal Practice and Procedure* § 3567 (Supp.1980); *Lentino v. Fringe Employee Plans, Inc.,* 611 F.2d 474, 478 (3d Cir. 1979); *Sparks v. Hershey,* 661 F.2d 30 at 33–34 (3d Cir. 1981). This doctrine is plainly applicable here. Not only do all of plaintiffs' claims arise from the same transaction, but also, the State law and federal constitutional claims complement one another. It may be, for example, that the existence of a State postdeprivation remedy for conversion would salvage an otherwise unconstitutional deprivation of property. *See Parratt v. Taylor, supra,* 101 S.Ct. at 1918.

### III.  THE MERITS.

■ On the facts of this case, it may be possible to resolve the dispute between the parties without reaching the constitutionality of the State law which plaintiffs challenge. "Where a case . . . can be decided without reference to questions arising under the Federal Constitution that course is usually pursued and is not departed from without important reasons." *Siler v. Louisville & Nashville R. Co.,* 213 U.S. 175, 193, 29 S.Ct. 451, 455, 53 L.Ed. 753 (1909); *Hagans v. Lavine, supra,* 415 U.S. at 546, 94 S.Ct. at 1383. *See also, Ashwander v. TVA,* 297 U.S. 288, 341–48, 56 S.Ct. 466, 480–83, 80 L.Ed. 688 (1936) (Brandeis, J., concurring); *Halderman v. Pennhurst State School and Hospital,* 612 F.2d 84, note 13 at 94 (3d Cir. 1979), *rev'd on other grounds,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981).

Reduced to their essence, plaintiffs' State law claims are simple: the defendants took property which belonged to the plaintiffs without any legal right to do so. Application of the common law principles of conversion to this case presents no intricate or novel problems, nor does it require the Court to interpret an ambiguous provision of State law. *See, Kennecott Corp. v. Smith,* 637 F.2d 181, 184–85 (3d Cir. 1980); *D'Iorio v. County of Delaware,* 592 F.2d 681, 686 (3d Cir. 1978).

The defendants' claim to the property in question rests on the abandonment provision of Section 5715(d). But that statute, on its face, presumes that the tenant has been afforded an opportunity to remove his or her property from the premises upon his or her eviction and fails to do so. On the present record, it appears that defendants denied Mombro and Adams such an opportunity. Instead they sought to use the property they had detained as leverage for the collection of back rent. *Cf. Parks v. "Mr. Ford", supra,* 556 F.2d 161. Thus, it may be that defendants alleged justification for this conduct rests upon a statute that is simply inapplicable to the facts of this case, in which event there will be no need to pass upon the constitutionality of that statute. For that reason, I will deny

defendants' motion to dismiss[4] and plaintiffs' motion for partial summary judgment, pending further development of the record with respect to plaintiffs' State law claims.

4. Defendants have also moved to dismiss plaintiffs' claims based on "the Civil Rights Act of 1866", on the ground that the complaint does not allege discrimination on the basis of race. *See Mahone v. Waddle*, 564 F.2d 1018, 1028 (3d Cir. 1977); *Croker v. Boeing Co.*, 662 F.2d 975 at 988–989 (3d Cir. 1981) (en banc) (Section 1981). I do not read the complaint to allege such a cause of action. What was intended was clearly an appositive reference to 42 U.S.C. § 1983, which was adopted as Section 1 of the Civil Rights Act of 1871.