507 U.S. 545 (1993)
UNITED STATES
v.
GREEN
No. 91-1521.
United States Supreme Court.
Argued November 30, 1992.
Decided April 5, 1993.
CERTIORARI TO THE DISTRICT OF COLUMBIA COURT OF APPEALS
Deputy Solicitor General Roberts argued the cause for the United States. On the briefs were Solicitor General Starr, Assistant Attorney General Mueller, Deputy Solicitor General Bryson, Robert A. Long, Jr., and Nina Goodman. 
Joseph R. Conte argued the cause and filed a brief for respondent.[*]
Per Curiam.
The Court is advised that the respondent died in Washington, D. C., on March 24, 1993. The Court's order granting the writ of certiorari, see 504 U. S. 908 (1992), therefore is vacated, and the petition for certiorari is dismissed. See Mintzes v. Buchanon, 471 U. S. 154 (1985).
It is so ordered. 
NOTES
[] The regulatory tolerance level in place for the mail issuance losses in this case was 0.5% of each reporting area's total mail issuances for each calendar quarter. 7 CFR § 274.3(c)(4)(i) (1986).
[] Title 7 CFR § 272.2(a)(2) (1992) provides in pertinent part:

"The basic components of the State Plan of Operation are the Federal/ State Agreement, the Budget Projection Statement, and the Program Activity Statement. . . . The Federal/State Agreement is the legal agreement between the State and the Department of Agriculture. This Agreement is the means by which the State elects to operate the Food Stamp Program and to administer the program in accordance with the Food Stamp Act of 1977, as amended, regulations issued pursuant to the Act and the FNSapproved State Plan of Operations."
Subsection (b)(1) sets out the exact wording of the preprinted Federal/ State Agreement. The provisions relevant to this dispute are as follows:
"The State of  and the Food and Nutrition Service (FNS), U. S. Department of Agriculture (USDA), hereby agree to act in accordance with the provisions of the Food Stamp Act of 1977, as amended, implementing regulations and the FNS-approved State Plan of Operation. The State and FNS (USDA) further agree to fully comply with any changes in Federal law and regulations. This agreement may be modified with the mutual written consent of both parties.
. . . . .
"The State agrees to: 1. Administer the program in accordance with the provisions contained in the Food Stamp Act of 1977, as amended, and in the manner prescribed by regulations issued pursuant to the Act; and to implement the FNS-approved State Plan of Operation." 7 CFR § 272.2(b)(1) (1992).
[] The Tenth Circuit holds that the Debt Collection Act of 1982 did not abrogate the Federal Government's common-law right to collect prejudgment interest against the States. Gallegos v. Lyng, 891 F. 2d 788 (1989). The Second, Third, and Eighth Circuits all hold to the contrary. See Perales v. United States, 751 F. 2d 95 (CA2 1984) (per curiam); Pennsylvania Dept. of Public Welfare v. United States, 781 F. 2d 334 (CA3 1986); Arkansas by Scott v. Block, 825 F. 2d 1254 (CA8 1987).
[] Both Texas and the Court of Appeals rely on Congress' authority to impose interest obligations on the States through specific statutes, such as the Medicaid Act, 42 U. S. C. § 1396b(d)(5), and the Social Security Act, 42 U. S. C. § 418(j) (1982 ed.), to support the proposition that the Debt Collection Act extinguished the Federal Government's common-law right to collect prejudgment interest. Both statutes, however, codified and made mandatory the common-law right to collect prejudgment interest at a specified interest rate. Like the Debt Collection Act, these statutes changed the common law. Congress' obvious desire to enhance the common law in specific, well-defined situations does not signal its desire to extinguish the common law in other situations.

Texas also relies on the recent amendment to 7 U. S. C. § 2022 adding a provision requiring prejudgment interest on specific obligations arising under the Food Stamp Act of 1977. Pub. L. 100-435, § 602, 102 Stat. 1674 (1988). But "subsequent legislative history is a `hazardous basis for inferring the intent of an earlier' Congress." Pension Benefit Guaranty Corporation v. LTV Corp., 496 U. S. 633, 650 (1990) (quoting United States v. Price, 361 U. S. 304, 313 (1960)). Texas' argument also fails because, like the Medicaid Act and the Social Security Act provisions, the Food Stamp Act of 1977 did not merely codify the common law without change. Rather, it contains a mandatory provision requiring prejudgment interest at a specified rate.
[] The interest rate required under § 3717 is "the average investment rate for the Treasury tax and loan accounts for the 12-month period ending on September 30 of each year, rounded to the nearest whole percentage point." 31 U. S. C. § 3717(a)(1).
[] Both Texas and the Court of Appeals rely upon our decision in Pennhurst State School and Hospital v. Halderman, 451 U. S. 1 (1981), for the proposition that the Federal Government may not collect prejudgment interest because neither the Debt Collection Act nor the Food Stamp Act expressly require prejudgment interest. This reliance is misplaced. In Pennhurst, we held that in order to impose conditions on the receipt of federal funds, Congress must speak unambiguously. Id., at 17. This makes sense because the States cannot voluntarily and knowingly agree to a condition that is not clearly expressed. Ibid. Because the duty to pay prejudgment interest on debts owed to the United States existed long before either the Food Stamp Program or the Debt Collection Act was created, the rule in Pennhurst does not apply. See Bell v. New Jersey, 461 U. S. 773, 790, n. 17 (1983).
[] "Interest, when not stipulated for by contract, or authorized by statute, is allowed by the courts as damages for the detention of money or of property, or of compensation, to which the plaintiff is entitled; and, as has been settled on grounds of public convenience, is not to be awarded against a sovereign government, unless its consent to pay interest has been manifested by an act of its legislature, or by a lawful contract of its executive officers. United States v. Sherman, 98 U. S. 565; Angarica v. Bayard, 127 U. S. 251, 260, and authorities there collected; In re Gosman, 17 Ch. D. 771." United States v. North Carolina, 136 U. S., at 216.
[] The individual States retain no sovereign immunity against the Federal Government. United States v. Texas, 143 U. S. 621 (1892).
[] "Judgments, it is true, are by the law of South Carolina, as well as by Federal legislation, declared to bear interest. Such legislation, however, has no application to the government. And the interest is no part of the amount recovered. It accrues only after the recovery has been had. Moreover, whenever interest is allowed either by statute or by common law, except in cases where there has been a contract to pay interest, it is allowed for delay or default of the debtor. But delay or default cannot be attributed to the government. It is presumed to be always ready to pay what it owes. " United States v. Sherman, 98 U. S. 565, 567-568 (1879) (emphasis added). See also United States v. North American Transportation & Trading Co., 253 U. S. 330, 336 (1920).
[] See n. 3, supra. 
[] See, e. g., Attorney General v. Cape Fear Navigation Co., 37 N. C. 444, 454 (1843) ("[T]he general rule is, that the State never pays interest, unless she expressly engages to do so"); State v. Thompson, 10 Ark. 61 (1849).
[] Title 31 U. S. C. § 3717(a) requires the appropriate government official to charge interest "on an outstanding debt on a United States Government claim owed by a person," but 31 U. S. C. § 3701(c) provides that for purposes of this section the term "`person' does not include an agency of the United States Government, of a State government, or of a unit of general local government."
[] So long as we are going to credit the Congress with a post hoc understanding of the common law, we might as well refer to the post hoc comments of the author of the amendment, Senator Percy:

"Prior to September 27, 1982, neither Senate bill 1249 nor House bill 4613 contained a provision exempting any entity from the Act. Several interest groups, however, presented the view that sections 10 and 11 of the Act, except in cases where fraud was evident, should not be applied to states or local governments because they constituted a different class of debtor than did private individuals and would suffer great harm if the federal government attempted to assess interest or apply administrative offsets against them. These same concerns had been presented in hearings before the House Committee on the Judiciary during the House's consideration of the Debt Collection Act of 1981, H. R. 4614.
"In response to these concerns, on September 27, 1982, I proposed an amendment to S. 1249. This amendment, UP amendment 1299, amended provisions in Sections 10 and 11 of the Act, stating that `the term "person" does not include any agency of the United States, or any state or local government.' This provision effectively took federal agencies, states and local governments out of the Act, but retained sufficient flexibility to permit Congress to legislatively pick and choose according to circumstances, those situations in which the government might assess interest against those entities exempted by the Act. As enacted, the Debt Collection Act of 1982 appears clear on this point. It was not anticipated that federal agencies would attempt to invoke common law authority, which, if it exists with respect to interest assessment and administrative offset against states and local governments, was abrogated by sections 10(e)(2) and 11(e)(8) of the Act." Letter of Nov. 21, 1983, from Senator Charles H. Percy to the Comptroller General (emphasis added). See Texas v. United States, 951 F. 2d 645, 649-650 (CA5 1992); Pennsylvania Dept. of Public Welfare v. United States, 781 F. 2d 334, 341, n. 10 (CA3 1986). Of course, the significance of a comment by an individual legislator is discounted when made "`after passage of the Act,' " see Bread Political Action Committee v. FEC, 455 U. S. 577, 582, n. 3 (1982). This Court's use of the 1987 opinion in the West Virginia case to describe the state of the common law in 1982 should be similarly discounted.
[] "The cases teachthat interest is not recovered according to a rigid theory of compensation for money withheld, but is given in response to considerations of fairness.It is denied when its exaction would be inequitable. United States v. Sanborn, 135 U. S. 271,281; Billings v.United States, 232 U. S. 261."Board of Commr's of Jackson County v. United States, 308 U. S. 343, 352 (1939).In 1987 the Court rejected the argument that "whether interest had to be paid depended on a balancing of equities between the parties." West Virginia v.United States, 479 U. S.,at 311, n.3.
[] Whatever it says about reserving discretion about when interest should be imposed, and at what rate, ante, at 536,the Court has tacitly authorized an extension of the rule on which we relied in West Virginia by affirming its application to a claim for prejudgment interest on a strict liability, loss-spreading provision of the Food Stamp Program.
[*] John Payton, Charles L. Reischel, Lutz Alexander Prager, and Edward E. Schwab filed a brief for the District of Columbia as amicus curiae urging reversal.

David A. Reiser filed a brief for the Public Defender Service et al. as amici curiae urging affirmance.
Thomas J. Charron, Bernard J. Farber, Fred E. Inbau, Wayne W. Schmidt, and James P. Manak filed a brieffor Americans for Effective Law Enforcement, Inc., et al. as amici curiae.