Earl A. HUMPHREYS, M.D., Petitioner,

v.

DRUG ENFORCEMENT
ADMINISTRATION,
Respondent.

No. 96–3099.

United States Court of Appeals,
Third Circuit.

Dec. 9, 1996.

Robert A. Felkay, John A. Tumolo, Pittsburgh, PA, for Earl A. Humphreys, M.D.

John C. Keeney, Theresa M.B. Van Vliet, Hope P. McGowan, Narcotic and Dangerous Drug Section, Criminal Division, Washington, D.C., for Drug Enforcement Administration.

Before BECKER, STAPLETON, and MICHEL,* Circuit Judges.

### OPINION OF THE COURT

MICHEL, Circuit Judge.

The Drug Enforcement Administration ("DEA") has moved this court pursuant to Third Circuit Appellate Rule 27.4 to vacate

---

* Hon. Paul R. Michel, United States Circuit Judge    for the Federal Circuit, sitting by designation.

our previously released decision and opinion resolving this appeal, *Humphreys v. Drug Enforcement Administration*, 96 F.3d 658 (3d Cir.1996), and to dismiss the appeal as moot. In that decision, we vacated the Deputy Administrator's order entered pursuant to 21 U.S.C. § 824(a)(4) (1994) revoking Earl A. Humphreys' Certificate of Registration to prescribe controlled substances. After the opinion was filed, but before the mandate issued, Dr. Humphreys died. The DEA argues Dr. Humphreys' death moots the appeal, strips this court of jurisdiction, and requires that we vacate our decision and withdraw the opinion. Because we plainly had jurisdiction over the appeal at the time our opinion was filed, our decision whether to vacate is discretionary. For the prudential reasons set forth below, we deny the DEA's motion to vacate.

### Factual Background

The facts are fully set forth in our previous decision in this case. *See Humphreys v. Drug Enforcement Administration*, 96 F.3d 658, 659–60 (3d Cir.1996). To summarize, Humphreys was a Pittsburgh doctor specializing in internal medicine and gastroenterology. On April 12, 1995, a Deputy Assistant Administrator of the DEA issued to Humphreys an Order to Show Cause why the DEA should not revoke Humphreys' certificate of registration under 21 U.S.C. § 824(a)(4) and deny any pending application under 21 U.S.C. § 823(f) as being inconsistent with the public interest. Specifically, the Order to Show Cause alleged that "from the early 1980s to mid–1993, [Humphreys] prescribed controlled substances to at least four individuals without a legitimate medical need and with knowledge that these individuals were not the ultimate recipients of the controlled substances." [JA25] In short, in order to preserve the privacy of his patient of many years, former Pennsylvania Supreme Court Justice Rolf Larsen ("Larsen"), Humphreys prescribed various controlled substances, primarily anti-depressants, for Larsen in the name of certain of Larsen's employees (secretaries and a law clerk).

After receiving the Order to Show Cause, Humphreys and his attorney each filed a response to the Order. Humphreys' primary defense was that, by prescribing the medication in the names of Larsen's close professional associates, he was merely attempting to protect Larsen's privacy and doing so in a manner common and acceptable in standard medical practice for famous patients with mental conditions.

On January 23, 1996, the Deputy Administrator entered his Final Order. The Deputy Administrator acknowledged that he could revoke Humphreys' registration only if continued registration would be inconsistent with the public interest pursuant to the five factors set forth in 21 U.S.C. § 823(f). The Deputy Administrator considered, discussed and relied upon each of the five factors except for factor three—Humphreys' conviction record under Federal or State laws relating to controlled substances, which, because he had none, was not a relevant factor—and, based upon these factors, determined that the public interest would be best served by revoking Humphreys' registration. The Deputy Administrator did not discuss, and apparently did not consider, Humphreys' privacy defense.

Humphreys appealed and we vacated, in large part because the DEA utterly failed to consider Humphreys' privacy defense. After our decision was filed, but before the mandate issued, Humphreys died. The DEA now requests that we vacate our previous decision, withdraw the opinion, and dismiss the appeal as moot.

### Decision

#### I.

Generally, when a case becomes moot pending disposition of an appeal, the judgment below will be vacated and the case will be remanded with instructions to dismiss. *See United States v. Munsingwear*, 340 U.S. 36, 39–40, 71 S.Ct. 104, 106–07, 95 L.Ed. 36 (1950) ("The established practice of the Court in dealing with a civil case from a court in the federal system which has become moot *while on its way here* or *pending our decision* on the merits is to reverse or vacate the judgment below and remand with a direction to dismiss.") (emphasis added) (dictum). The

purpose of such a practice is to prevent a party from being bound by a judgment the "review of which was prevented through happenstance." *Id.* at 40, 71 S.Ct. at 107.

*Munsingwear,* however, is not universally applicable to all cases which seemingly become moot anytime during the appellate process. For example, previously issued decisions need not be vacated when a case becomes moot due to settlement. *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership,* 513 U.S. 18, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994). In *U.S. Bancorp,* after the Supreme Court had granted the petition for a writ of certiorari and received briefing, the parties entered into a consensual plan of reorganization which constituted a settlement of the case. 513 U.S. at ——, 115 S.Ct. at 389. Bancorp requested that the Supreme Court vacate the decision of the court of appeals; Bonner objected. *Id.* While recognizing that *Munsingwear* was applicable to situations in which a controversy presented for review had become moot due to circumstances unattributable to either party, the Supreme Court refused to extend *Munsingwear* to a case which became moot due to settlement, stating that "[t]he principles that have always been implicit in our treatment of moot cases counsel against extending *Munsingwear* to settlement. From the beginning we have disposed of moot cases in the manner 'most consonant to justice' ... in view of the nature and character of the conditions which have caused the case to become moot." *Id.* at ——, 115 S.Ct. at 391. (citation omitted). Thus, *Munsingwear* should not be applied blindly, but only after a consideration of the equities and the underlying reasons for mootness.

The DEA has not cited any controlling precedent, either in the Third Circuit or the Supreme Court, that would require us to vacate our previously released decision and withdraw the opinion merely because Dr. Humphreys died before the Clerk's Office issued the mandate; nor have we found any. Indeed, most analogous Supreme Court decisions suggest otherwise. For example, the Supreme Court does not vacate a circuit court decision where a party dies after a petition for certiorari has been granted but before the Supreme Court has decided the merits. *See United States v. Green,* 507 U.S. 545, 113 S.Ct. 1835, 123 L.Ed.2d 260 (1993) (memorandum opinion); *Mintzes v. Buchanon,* 471 U.S. 154, 105 S.Ct. 2006, 85 L.Ed.2d 120 (1985) (memorandum opinion). Rather, in these cases, the Supreme Court merely vacated the order granting certiorari and dismissed the petition, leaving the circuit court decision standing. *Id.* Although in these cases the mandate had presumably issued from the circuit court, they nonetheless at least implicitly support the proposition that asserted mootness occurring after the filing of an appellate opinion does not require that the appellate opinion be withdrawn, even where the Supreme Court has chosen to exercise its discretion in favor of reviewing the case. Similarly, in at least one instance the Supreme Court refused to grant a request that the Court vacate its own previously issued decision after being informed on petition for rehearing that the appellant had died before the filing of the Supreme Court's opinion. *Robinson v. California,* 371 U.S. 905, 83 S.Ct. 202, 9 L.Ed.2d 166 (1961) (order denying petition for rehearing with dissent).

■ The Supreme Court opinions discussed above demonstrate that the decision whether or not to vacate a previously issued decision is within our discretion based on equity. *U.S. Bancorp,* 513 U.S. at ——, 115 S.Ct. at 391 ("The reference to 'happenstance' in *Munsingwear* must be understood as an allusion to this equitable tradition of vacatur.") Moreover, Third Circuit case law demonstrates that our determination regarding whether or not to vacate our own issued appellate decision lies within our discretion. We find applicable here the reasoning of *Finberg v. Sullivan,* 658 F.2d 93 (3d Cir. 1981) (en banc), despite differences in the procedural posture. There, this court issued a decision holding that Pennsylvania's post-judgment garnishment procedures violated the United States Constitution. *Id.* at 94. The defendants timely filed a notice of appeal to the Supreme Court, but did not timely docket an appeal and later requested that this court vacate its decision on the ground that the state statute at issue had been amended, rendering the case moot. The en

banc court ultimately concluded the case was not moot. *Id.* at 98. However, in discussing the law of mootness, the court suggested that there is a critical difference between decisions that may be appealed as of right and those that may not, because the refusal to vacate an issued appellate decision not appealable as of right does not have the improper effect of allowing a reviewable but unreviewed judgment to stand. *Id.* at 96 n. 4. ("Because the Supreme Court's review of appellate court decisions is, for the most part, discretionary, the Court's failure to vacate judgment in a moot case ordinarily will not deprive a losing party of a review on the merits to which it is entitled. Accordingly, the Supreme Court is not obligated to vacate lower court judgments in cases that become moot, although it most frequently exercises its jurisdiction to do so."). Thus, in such a case the asserted mootness is not a question of jurisdiction implicating the Article III requirement of a live case or controversy, but is prudential.[1]

■ Unlike the situation described in *Munsingwear*, this case is not one that became moot while "on its way here" or while "pending our decision on the merits." Rather, we heard and determined the merits of the appeal. As of the time our decision was filed, there was indisputably a live controversy between the parties, one that significantly impacted upon both Dr. Humphreys' reputation and his livelihood. We therefore plainly possessed jurisdiction over the appeal. Thus, in the true, *i.e.*, jurisdictional, sense of mootness, the appeal is not moot. As the Ninth Circuit once said when asked to vacate a decision it had already issued:

There is a significant difference between a request to dismiss a case or proceeding for mootness prior to the time an appellate court has rendered its decision on the merits and a request made after that time. Different considerations are applicable in the two circumstances. When we refrain from deciding a case on grounds of mootness, we do so based upon the limitations of our power. We do not have the constitutional authority to decide moot cases. Here, a valid decision has already been rendered. In these circumstances, while we are not precluded from exercising article III power, we are likewise not prohibited from dismissing the case post hoc. Whether or not to dismiss is a question that lies within our discretion.

*Armster v. United States District Court,* 806 F.2d 1347, 1355 (9th Cir.1986) (footnote omitted) (refusing to vacate previously issued appellate decision but relying primarily on a determination that the case was not moot under the voluntary cessation exception to the mootness doctrine). Moreover, the mere fact that the ministerial act of issuing the mandate remains to be completed should not determine the outcome. *Id.* at 1355 n. 9; *see also Finberg,* 658 F.2d at 97 n. 5 ("Nonetheless, the extent of a Court's supervision of a case between entry of judgment and issuance of mandate should not be overstated.... For most purposes, the entry of judgment, rather than the issuance of mandate, marks the effective end to a controversy on appeal.").

The DEA was not due further review as a matter of right. All three remaining avenues of further review are discretionary: panel reconsideration, en banc rehearing and certiorari by the Supreme Court. Thus, there is no threat that the DEA will be affected by a reviewable but unreviewed decision that was not reviewed due only to happenstance.[2]

---

1. The discretionary nature of our decision is also demonstrated by the fact that appellate courts routinely refuse to vacate their own decisions when the parties settle their dispute after an appellate decision has issued. *See, e.g., Manufacturers Hanover Trust Co. v. Yanakas,* 11 F.3d 381 (2d Cir.1993) (relying on fact that further appeal was not available as of right, that following such a practice of routinely vacating appellate decisions would allow parties to obtain advisory opinions, and that following such a practice would allow parties with deep pockets to eliminate unreviewable precedents by agreeing to set-

tle); *In re United States,* 927 F.2d 626 (D.C.Cir. 1991) (relying on theory that the judicial value of the precedent should not become a bargaining chip in the settlement bargaining process).

2. The Supreme Court recently confronted the argument that vacatur of a district court decision appealable as of right should be more freely granted than vacatur of appellate decisions. *U.S. Bancorp,* 513 U.S. at ——, 115 S.Ct. at 386. The Supreme Court, in dicta, responded that the right to further review, or absence thereof, has no bearing on the lack of equity of a litigant who

## II.

██ In light of the discretionary nature of our decision, we conclude that a balancing of public policies suggests that the better course of action here is to allow our decision to stand. There are several policy reasons suggesting that our previous opinion should not be withdrawn, and the DEA has failed to point to any policy reason that would justify withdrawing it.

Our previous opinion carefully analyzed the DEA's interpretation of 21 U.S.C. § 824(a)(4) and concluded that the DEA had wrongly interpreted and applied that statute by failing to consider Humphreys' privacy defense, which rested on the argument that his actions allegedly fell within acceptable medical practice. As the DEA is the sole agency authorized to revoke registrations under this statute, and as the DEA will likely continue to apply its erroneous interpretation absent a binding contrary interpretation, a decision declaring and clarifying the law that the DEA must apply in every revocation case is of utmost importance. In light of the complete absence of case law interpreting the relevant statute, we believe it would not be prudent to withdraw our opinion.

This is especially so given the fact that we can see no unfairness to the DEA in allowing the decision to stand. The DEA had a full and fair opportunity to present its case and convince this court that the DEA had correctly interpreted and applied the law. Our decision was reached only after adequate briefing and argument by genuine adversaries. The mere fact that we decided the case against the DEA is not a sufficient reason to withdraw our opinion. *Cf. Armster*, 806 F.2d at 1355 ("Were we to vacate our decision in *Armster I* based upon conduct occurring after its issuance, we would be depriving the petitioners of the benefit of an appellate court decision that adjudicated properly presented questions concerning their specific

constitutional rights. That alone would give us considerable pause.")

Moreover, the DEA's legally incorrect actions unquestionably tainted Dr. Humphreys' reputation in the community, perhaps unnecessarily. The withdrawal of our opinion—which clarified that the DEA had acted improperly in revoking Dr. Humphreys' registration and provided Humphreys another opportunity to defend himself—could not help, and might only further hurt, Humphreys' reputation. As there is no way to know whether Humphreys' registration would have been revoked had the DEA applied the correct legal standard in its analysis, we should avoid inflicting any further harm to Humphreys' reputation.

## III.

We have carefully considered and discuss, seriatim, below each of the cases cited by the DEA in support of its argument that the required disposition of this motion is to vacate the panel's decision, withdraw the opinion and dismiss the appeal. However, none of these cases compel the result urged by the DEA. The only Supreme Court decision cited by the DEA, *Stewart v. Southern Railway Co.*, 315 U.S. 784, 62 S.Ct. 801, 86 L.Ed. 1190 (1942), contains merely a one paragraph statement vacating the Supreme Court's earlier issued decision after the parties settled while a petition for rehearing was pending. In light of later Supreme Court case law, such as *U.S. Bancorp*, limiting the circumstances in which an appellate decision must be vacated and the lack of any explanation whatsoever for the actions taken in the *Stewart* case, it cannot be said that *Stewart* requires the DEA's suggested result in the present case. Moreover, it is unclear in *Stewart* whether the petition for rehearing had actually been granted, thus *entitling* the parties to further review, or whether the petition had merely been filed.

---

voluntarily abandoned review and that the distinction was not valid if it was premised on the idea that district court decisions are more likely to be overturned and hence presumptively less valid. *Id.* We do not rely on either theory here; rather, we rely on the concept that, regardless of the outcome of any envisioned further appeal, it

is within equity to bind a party to a judgment that reflects appellate scrutiny and is no longer appealable as of right, but it may be inequitable to bind a party to a judgment that would have been so scrutinized but was not only through happenstance.

All of the remaining cases cited by the DEA are from sister circuits and therefore not binding on us; nor do we find them persuasive. In one, the appellate court had already agreed to rehear the case en banc before learning of the settlement, thus ensuring, albeit improperly, that "but for" the settlement the panel decision would have been reviewed. *Key Enter. of Delaware, Inc. v. Venice Hosp.,* 9 F.3d 893 (11th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2132, 128 L.Ed.2d 863 (1996). Here, no such petition was granted. Moreover, the court there also expressed concern that parties to a suit should not be allowed to manipulate the court's precedential statement of the law through their own private agreement. *Id.* at 899. Such a concern, of course, does not play any role in this case where a party died of natural causes; it does show, however, the wide range of public policy considerations a court should assess in exercising its discretion.

Nor do we find persuasive the decision in *Independent Union of Flight Attendants v. Pan American World Airways, Inc.,* 966 F.2d 457 (9th Cir.1992). There, although a panel opinion was vacated because the case became moot while a petition for rehearing was pending, the court provided no explanation for its actions. *Id.* at 459.

Similarly, in *In re Ghandtchi,* 705 F.2d 1315 (11th Cir.1983), the court provided no persuasive explanation for its decision to vacate the district court judgment where mootness occurred after the appellate court filed its decision but before the mandate issued. *Id.* at 1315–16. Moreover, the Court of Appeals for the Eleventh Circuit explicitly noted that it was aware of no other case in which mootness occurred after the appellate court had filed a decision but before the mandate had issued. *Id.* at 1316. In any event, as noted above, our circuit recognizes the minimal role a court ordinarily plays between the filing of a decision and the issuance of a mandate.

Finally, in *In re United States,* 927 F.2d 626 (D.C.Cir.1991), the Court of Appeals for the District of Columbia Circuit actually *denied* the parties' motion to vacate the appellate decision after the parties settled during the pendency of a petition for certiorari. Although that opinion does contain language suggesting that a court of appeals *may* vacate its decision when a case becomes moot before the issuance of a mandate, *id.* at 627, that language only recognizes the obvious: discretionary power may be exercised in either direction.

## IV.

We therefore hold that this court properly exercised jurisdiction over the appeal at the time the decision was filed and that the death of Dr. Humphreys does not provide a sufficient justification to exercise our prudential authority to vacate the issued panel decision merely because the death occurred before the mandate issued and because, given his death, no remand proceedings can be conducted as required by the decision. It is therefore ORDERED that:

1. The motion to vacate the September 17, 1996 panel decision as moot and to dismiss the appeal is denied.

2. The DEA shall have 14 days from the date of this Order in which to file a petition for rehearing and/or rehearing en banc.