# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

MICHAEL CLAY PAYTON,
          *Defendant-Appellant.*

No. 07-10567

D.C. No.
CR-05-00333-OWW

ORDER

Filed January 15, 2010

Before: William C. Canby, Jr. and Kim McLane Wardlaw,
Circuit Judges, and Richard Mills,* District Judge.

---

## ORDER

This order addresses procedural issues that arose after the filing of our opinion in this matter on July 21, 2009. *See United States v. Payton*, 573 F.3d 859 (9th Cir. 2009). The issues primarily concern post-opinion mootness and the question whether our opinion should be vacated and the appeal dismissed as moot. We deny vacatur and dismissal.

Our opinion held that a search of Payton's computer was unlawful, and we accordingly reversed the denial of Payton's motion to suppress the fruits of that search. We remanded with instructions to permit Payton to withdraw his conditional guilty plea. *See id.* at 864-65.

After our opinion was filed, the government asked for and received an extension of time to September 3, 2009, to file a

---

*The Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

petition for rehearing. The government subsequently decided not to file a petition, and the September 3 deadline passed. On September 8, our Clerk's office issued our mandate, two days early. *See* Fed. R. App. P. 41(b). The mandate was transmitted to the district court and still appears in its docket. That same day, a judge of our court issued a stop-clock order to our Clerk, which has the effect under our General Orders of extending by 14 days the time to call for rehearing en banc. G.O. 5.4(e). The stop-clock order was timely, having been issued within seven days of the expiration of time for filing petitions for rehearing. G.O. 5.4(d), (e). Recognizing that the mandate had been issued prematurely, our Clerk's office deleted as erroneous the entry in our docket showing that the mandate had issued. The record does not reflect that this correction was sent to or reached the district court.

On September 16, the judge who had stopped the clock called *sua sponte* for a vote to rehear the case en banc, and requested briefing by the parties as to rehearing en banc. That briefing was ordered on September 21 and was completed by November 4.

Meanwhile, however, on September 14, Payton had moved in district court to withdraw his conditional plea of guilty, pursuant to the mandate from this court that was entered in the district court docket. Relying on that mandate, the government did not oppose the motion and it was granted. The government then moved to dismiss the case and the district court granted the motion.

The government recited these events in its supplemental en banc brief, indicating that the case was finished in the district court. The government further stated that, although it disagreed with our opinion, it did not seek en banc review because, among other reasons, it believed that the decision would "have minimal impact" on law enforcement.

At this point, the judge seeking en banc review noted, correctly, that the case had become moot, and asked our panel to

vacate its decision and dismiss the appeal as moot. The panel declined to vacate and dismiss for the following reasons.

First, the mootness did not arise while the decision on appeal was pending, or even while a petition for rehearing was pending. It did not arise because of some external event. It arose because the government, accepting the consequences of our adverse opinion and the mandate that had been entered in the district court, unilaterally determined to dismiss the case. It is true that the mandate was issued in error, but even if we deem the issuance ineffective, that does not change our result. If we vacate our decision in these circumstances, then a party that suffers an adverse opinion from our court can escape the estoppel or precedential consequences of the adverse decision by carrying it out before our mandate properly issues. This precise scenario was anticipated in *Armster v. United States District Court*, 806 F.2d 1347 (9th Cir. 1986), in which we refused mandamus to vacate an earlier decision on the ground of post-decision mootness allegedly caused by a change in the government's administrative position. We explained:

> Implicitly, the Justice Department urges us to adopt a new uniform rule, *viz.* when a losing party acts in accordance with an appellate court's decision before it becomes "final," that decision becomes *ipso jure* moot . . . .

> . . . [T]he new rule suggested by the Justice Department would encourage manipulation of the judicial system by wrong-doers. It would allow them to seek the benefits of a favorable judicial decision but escape some of the more significant adverse consequences of an unfavorable judgment. In the case of the government, heads of administrative agencies and other public officials could as a matter of course cause the withdrawal of decisions establishing unfavorable precedents or vindicating individual rights

> by complying with those decisions before the mandate issues. Such a result would be inconsistent with the manner in which our system of checks and balances is intended to operate. Accordingly, we reject the Justice Department's suggestion.

*Id.* at 1355-56. The same observation has been made by the Third Circuit en banc, *Finberg v. Sullivan*, 658 F.2d 93, 97 n.6 (3d Cir. 1981) ("We fear that granting defendants' motion for vacation of judgment might have the undesirable consequence in future cases of encouraging the losing party on appeal to seek to delay the issuance of the mandate and in the interim bring about, for the sole purpose of evading the unfavorable decision, events which moot the case.").[1]

Other circuits also have declined to dismiss for mootness after an opinion has been handed down, even though the mootness arose before a mandate was issued. In *Bastien v. Senator Ben Nighthorse Campbell*, 409 F.3d 1234 (10th Cir. 2005), Senator Campbell moved to vacate a decision and dismiss an appeal because his Senate term ended and he was sued in his capacity as senator. The court denied the motion, pointing out that the case had not been moot when the opinion was handed down. *Id.* at 1235. The fact that the mandate had not issued was "inconsequential." *Id.* The court also relied on the Second Circuit's ruling in *In re Grand Jury Investigation*, 399 F.3d 527 (2d Cir. 2005). There the Second Circuit stated:

---

[1]*In re Pattullo*, 271 F.3d 898 (9th Cir. 2001), does not hold to the contrary. *Pattullo* involved mootness that arose when the district court dismissed a Chapter 13 bankruptcy proceeding that was the subject of a pending appeal in our court. The dismissal occurred prior to our issuance of a memorandum disposition (although we were not notified until after the disposition was filed). We vacated and dismissed because there was no district court proceeding on which our decision could operate. *Id.* at 901. We also stated in dictum that "[e]ven after an appellate court has issued its decision, if it has not yet issued its mandate and the case becomes moot, the court will vacate its decision and dismiss the appeal as moot." *Id.* at 900-01. Application of *Pattullo*'s dictum in the circumstances of the present case would clearly be inconsistent with *Armster*.

> At least in the civil context, vacatur of a previously issued decision of a court of appeals is not constitutionally mandated, and indeed is typically inappropriate, when the appeal is subsequently mooted due to settlement between the parties or the losing party's unilateral actions. We generally have discretion, moreover, to leave our order intact where the circumstances leading to mootness occur after we file our decision but before the mandate has issued.

*Id.* at 529 n.1 (internal citation omitted).[2]

It is true that, when a case becomes moot in a court of appeal *prior* to decision, its mootness ordinarily requires not only dismissal of the appeal but vacatur of the district court opinion being appealed. *See United States v. Munsingwear, Inc.*, 340 U.S. 36, 39-40 (1950). But even in that circumstance, the Supreme Court has rejected mandatory vacatur when mootness is caused by a voluntary settlement. *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18 (1994). "The principal condition to which we have looked is whether the party seeking relief from the judgment below caused the mootness by voluntary action." *Id.* at 24. In reviewing *U.S. Bancorp* and other Supreme Court cases, the Third Circuit concluded that they "demonstrate that the decision whether or not to vacate a previously issued decision is within our discretion based on equity." *Humphreys v. DEA*, 105 F.3d 112, 114 (3d Cir. 1996). Exercising that discretion, the Third Circuit refused to vacate a decision overturning the

---

[2]The only circuit court decisions we have found to the contrary are those of the Fifth Circuit in *United States v. Caraway*, 483 F.2d 215 (5th Cir. 1973) (en banc), and *United States v. Miller*, 271 F.3d 898 (5th Cir. 2001) (per curiam order). In *Caraway*, a district court dismissed the underlying indictment in accord with the Fifth Circuit's decision before its mandate issued. The Fifth Circuit vacated its decision and dismissed the appeal as moot, over the dissent of four judges. With all due respect, we find the positions of the Second, Third and Tenth Circuits, and our own binding decision in *Armster*, more persuasive than that of the Fifth Circuit.

DEA's revocation of a physician's prescription license even though the physician died before the appellate mandate issued. It noted:

> The DEA was not due further review as a matter of right. All three remaining avenues of further review are discretionary: panel reconsideration, en banc rehearing and certiorari by the Supreme Court. Thus, there is no threat that the DEA will be affected by a reviewable but unreviewed decision that was not reviewed due only to happenstance.

*Id.* at 115 (footnote omitted).[3]

In *Payton*, the situation is even more strongly against a discretionary vacatur. To summarize the major reasons:

*First*. The mootness in this case arose after our decision was issued (and, indeed, after the time for a petition for rehearing had run). Our case is therefore distinguishable from such cases as *Arizonans for Official English v. Arizona*, 520 U.S. 43, 59-60 (1997), and *Munsingwear*, 340 U.S. at 37, where mootness occurred prior to decision. Our case was a live controversy when we decided it.

*Second*. The mootness was brought about by the voluntary act of the party losing the decision now sought to be vacated. The government's act, although undertaken in the justifiable belief that our mandate had properly issued, was nevertheless voluntary because the mandate required only that Payton be allowed to withdraw his conditional guilty plea. It did not

---

[3]The Third Circuit also called attention, 105 F.3d at 114, to an even more extreme instance, where the Supreme Court denied rehearing of its celebrated decision in *Robinson v. California*, 370 U.S. 660 (1962), over a dissent urging that the decision should be vacated as moot because it turned out that the appellant had died before the Supreme Court heard his appeal. 371 U.S. 905 (1962).

require the government to dismiss its charges, a decision within its prosecutorial judgment. Mootness caused by the unilateral action of a losing party is ordinarily not a ground for vacatur of the decision establishing the loss. *See U.S. Bancorp*, 513 U.S. at 26.

*Third*. Even if mootness were deemed to have been precipitated inexorably by our mandate, that fact can hardly amount to the kind of external "happenstance" requiring vacatur in fairness to a party "frustrated by the vagaries of circumstance." *Id.* at 25. Losing an appeal and dismissing charges in light of that loss can hardly be deemed external to the case.

*Fourth and last*. The government was deprived of no opportunity to contest our decision. It appealed, briefed and argued its position, and made a conscious decision not to petition for rehearing of our adverse decision after receiving an extension of time.

It is true that our refusal to vacate the decision after it has become moot deprives a member of our court of the right to seek *sua sponte* an en banc rehearing in order to obtain a different decision on the merits (although it leaves open the opportunity to seek an en banc rehearing for the purpose of vacating our decision). We do not minimize that right, but have concluded that it does not overcome the equities we have described and does not justify erasing a decision that the panel issued when the controversy was still live, and that the parties have complied with and are content to let stand.

For all these reasons our panel declined to vacate its decision and dismiss the appeal as moot. The judge who initially sought en banc review then called for an en banc vote to rehear the matter for the purpose of vacating the decision as moot and dismissing the appeal. A vote was taken and the matter failed to receive a majority of the votes of the non-recused active judges in favor of en banc consideration. *See* Fed. R. App. P. 35.

**VACATUR AND DISMISSAL DENIED.**