*1169 BERZON, Circuit Judge,
concurring in the denial of reconsideration en banc:
I concur in the court’s denial of rehearing en banc regarding vacatur. I have full confidence in the panel’s decision. I write to emphasize that, although one would think otherwise from the three dissents from denial of rehearing en banc, judges are empowered to decide issues properly before them, not to express their personal views on legal questions no one has asked them. There is no appeal currently before us, and so no stay motion pending that appeal currently before us either. In other words, all the merits commentary in the dissents filed by a small minority of the judges of this court is entirely out of place.
Here is the background: A three-judge panel of this court decided that the Government was not entitled to a stay pending appeal of the district court’s Temporary Restraining Order enjoining enforcement of the President’s January 27, 2017 Executive Order. Washington v. Trump, 847 F.3d 1151, 1156 (9th Cir. 2017). The Government chose not to challenge the panel’s order further but instead to draft a revised Executive Order, revoking the one that was before this court’s panel. Exec. Order 13780 of March 6, 2017 §§ l(i), 13, 82 Fed. Reg. 13209 (published Mar. 9, 2017). That Order was expressly premised on the panel opinion. Id. § 1(c), (i). The Government has since elected to dismiss this appeal, and with it its stay request; it filed an unopposed motion to dismiss, which we granted, and did not in that motion ask that the panel, or an en banc court, vacate the panel’s opinion.[1]
So there is now no live controversy before our court regarding either the merits of the underlying case or the propriety of the original restraining order. “In our sys-tern of government, courts have no business deciding legal disputes or expounding on law in the absence of ... a case or controversy.” Already, LLC v. Nike, Inc., 568 U.S. 85, 133 S.Ct. 721, 726, 184 L.Ed.2d 553 (2013) (internal quotation marks omitted) (citing DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 341, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006)).
One judge of the court nonetheless called for a vote of the active judges as to whether to convene an en banc court for the sole purpose of vacating the panel’s opinion. As the panel’s March 15, 2017 order, denying rehearing en banc, notes, vacating an opinion where the losing party’s voluntary actions have mooted the appeal is ordinarily improper. See U.S. Bancorp Mortg. Co. v. Bonner Mall P’ship, 513 U.S. 18, 25-27, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994); United States v. Payton, 593 F.3d 881, 883-86 (9th Cir. 2010). And as Judge Bybee’s dissent reflects, the only justification offered for vacating the opinion was a disagreement on the merits.
It is simply not an “exceptional circumstance[ ]” justifying the “extraordinary remedy of vacatur” that members of our court disagree with a panel opinion. See Bonner Mall, 513 U.S. at 26, 29, 115 S.Ct. 386.1 am aware of no instance in which we have convened an en banc panel to vacate a precedential opinion on the basis of its merits, where no party seeks further appellate review or vacatur. Compare Animal Legal Def. Fund v. Veneman, 490 F.3d 725, 725-27 (9th Cir. 2007) (en banc) (Bybee, J., concurring) (vacating a panel opinion in light of a settlement agreement dependent on vacatur reached after a majority of the court already had voted to take the case en banc and designated the *1170 panel’s opinion non-precedential). Rather, it is “inappropriate ... to vacate mooted cases, in which we have no constitutional power to decide the merits, on the basis of assumptions about the merits.” Bonner Mall, 513 U.S. at 27, 115 S.Ct. 386.
We as a court make the vast majority of our decisions through three-judge panels, and we abide by the decisions of those panels absent a decision by a majority of the active judges that there is good reason to reconsider the case with a larger, eleven-judge panel, determined by lot. See Fed. R. App. P. 35; Ninth Cir. R. 35-3; Ninth Cir. Gen. Order 5.1-5.5. Reconsidering a case before an en banc panel after full argument and coming to a new, reasoned decision—which might reach the same result as the earlier panel decision or might conclude otherwise—is an entirely different matter from what was sought here: wiping out the panel’s decision and leaving a vacuum. The en banc court would have no authority whatever to opine on the merits of the case or the propriety of the district court’s stay, as there is simply no live appeal before us.
Article III of the United States Constitution precludes us from revisiting the issues addressed in the panel opinion at this point, as any decision rendered by the en banc court necessarily would be advisory. See Already LLC, 133 S.Ct. at 726. A few dissenting colleagues have nonetheless used the decision by the active judges of the court to decline to rewrite history as the occasion to attack the panel opinion on myriad grounds. As there is nothing pending before us, it would be entirely inappropriate to respond in detail—which, I presume, is precisely why the panel did not do so.
In some ways that is too bad. There is much to discuss, and such discussion would show that the panel’s opinion was quite correct.
To take but one example: The cases Judge Bybee cites regarding the applicability of Kleindienst v. Mandel, 408 U.S. 753, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972), do not govern the case as it came to the panel. None addresses whether the “facially legitimate and bona fide reason” standard articulated in Mandel applies to executive action that categorically revokes permission to enter or reenter the country already granted by the Executive Branch. See Kerry v. Din,-U.S.-, 135 S.Ct. 2128, 2139, 192 L.Ed.2d 183 (2015) (Kennedy, J., concurring in the judgment); Fiallo v. Bell, 430 U.S. 787, 792-95, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977); Cardenas v. United States, 826 F.3d 1164, 1171-72 (9th Cir. 2016); An Na Peng v. Holder, 673 F.3d 1248, 1258 (9th Cir. 2012); Bustamante v. Mukasey, 531 F.3d 1059, 1062 (9th Cir. 2008); Padilla-Padilla v. Gonzales, 463 F.3d 972, 978-79 (9th Cir. 2006); Nadarajah v. Gonzales, 443 F.3d 1069, 1082 (9th Cir. 2006); Barthelemy v. Ashcroft, 329 F.3d 1062, 1065-66 (9th Cir. 2003); Noh v. INS, 248 F.3d 938, 942 (9th Cir. 2001). That the Second Circuit applied Mandel’s test to a program requiring certain non-immigrants to provide information to authorities (and to face removal only after undergoing “generally applicable legal [removal] proceedings to enforce pre-existing immigration laws”), see Rajah v. Mukasey, 544 F.3d 427, 439 (2d Cir. 2008), in no way portends that application of Mandel was appropriate here. The question before our panel, unlike the one in Rajah, concerned a sweeping Executive Order that barred from entry whole groups of legal permanent residents and visa holders, among many others, without any individualized determination regarding the revocation. Presumably recognizing the weight of these individuals’ constitutional interests, the President excepted *1171 them from the revised Executive Order. See Exec. Order 13780 § 3.
Judges Kozinski and Bea likewise used the filing of the order denying rehearing en banc as to the question of vacating the panel opinion as a platform for providing their personal views as to the merits of that opinion. Both concern themselves with issues the panel expressly did not finally resolve. See Bea, J., dissenting from denial of rehearing en banc, at 1185-88 (discussing parens patriae standing); Kozinski, J., dissenting from denial of rehearing en banc, at 1172-74 (discussing the Establishment Clause); Washington, 847 F.3d at 1161 n.5, 1168 (explicitly declining to reach the questions of parens patriae standing and, after outlining the parameters of the appropriate Establishment Clause analysis, not coming to rest on the likelihood of success with respect to that issue). Further, Judge Kozinski expresses at some length his unhappiness with the invocation of the panel’s Establishment Clause analysis in a recent district court order, once again venturing an opinion on an appeal not before us—in this instance, not because the appeal was withdrawn but because none has yet been filed.[2]
There will be ample opportunity, and probably soon, see Order Granting Motion for Temporary Restraining Order, Hawaii v. Trump, No. 1:17-cv-00050 DKW-KSC, 2017 WL 1011673 (D. Haw. Mar. 15, 2017), for further review of the important issues raised by the President’s Executive Orders. And it is apparent from the Government’s delay in promulgating a new Executive Order, and in the ten-day delay in implementation within the revised Order, see Exec. Order 13780 § 14, that no overwhelming exigency counsels in favor of abandoning the ordinary process of adversarial appellate review.
I well understand the importance of the cases concerning these Executive Orders. They raise critical questions concerning the reach of executive and judicial authority, and they could profoundly affect the lives of our citizens, our communities, and our position in the world. It is their very seriousness that, in my view, commands that we as judges speak about them when we have authority to do so, which is when we are asked by litigants to settle a dispute. The court at large has not been asked. So my dissenting colleagues should not be engaging in a one-sided attack on a decision by a duly constituted panel of this court.
We will have this discussion, or one like it. But not now.

. On the contrary, both parties have since . relied on the opinion in staking out their positions. See Exec. Order 13780 § 1(c), (i); Resp. to Defs.' Notice of Filing of Exec. Order at 2-11, Washington v. Trump, No. 2:17-cv-00141-JLR (W.D. Wash. Mar. 9, 2017).

. Judge Kozinski also contests the scope of the Temporary Restraining Order the panel declined to stay, observing that relatively few of the affected individuals have lawful status. Again, this was not the occasion to opine on the contours of a now-moot injunction. And, contrary to Judge Kozinski’s representation, the number of individuals covered directly by the panel's due process analysis was substantial—there were tens-of-thousands of individuals whose already approved visas were revoked. See Mica Rosenberg & Lesley Wroughton, Trump's Travel Ban Has Revoked 60,000 Visas for Now, Reuters, Feb. 3, 2017, http://www.reuters. com/article/us-usa-immigration-visas-idUSKBN15I2EW (citing figures provided by the Government).