**Dissenting Opinion Filed March 6, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-01333-CV

## IN RE BRUCE BISHOP, ASHLEY HUTCHESON, DALLAS COUNTY REPUBLICAN PARTY AND MISSY SHOREY, Relators

**Original Proceeding from the 68th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-14298**

## OPINION DISSENTING FROM WITHDRAWAL OF OPINION

Before the Court sitting *En Banc*
Opinion by Justice Schenck

A majority of the court sitting *en banc* has ordered withdrawal of the panel opinion in this case though no party has requested it. The majority explains its rationale for doing so as being in the "public interest." A separate concurring opinion explains the majority's reasoning in support of that conclusion. In Part I below, I will address the decision to withdraw the panel opinion. In Part II, I will address the merits as addressed in the separate concurring opinion.

# I.

### A.    *Subject Matter Jurisdiction is Necessary to a Merits Disposition*

As detailed below, I agree that it is useful, indeed necessary, that the Court explain its rationale for withdrawing the panel opinion. Although the majority indicates that it is withdrawing the opinion as a matter of discretion because doing so is said to be in the public interest, it does not explain what that public interest is, leaving the reader to surmise its rationale. While I have no doubt that any court of appeals justice is entitled—arguably obliged—to express his or her views on any decision we make under appellate rule 47.5, including the decision to withdraw, when we act *as a court* our actions must be premised on a valid exercise of our subject-matter jurisdiction. And, of course, where a court acts on the merits despite its lack of subject-matter jurisdiction, the order is void and subject to the simplest form of mandamus correction. *Crouch v. Craik*, 369 S.W.2d 311, 314 (Tex. 1963) (orig. proceeding). Thus, the rationale underlying our invocation of "public interest" cannot be an adoption of the rationale of the concurring opinion.

Here, of course, our jurisdiction is extremely limited. *See Speer v. Presbyterian Children's Home & Serv. Agency*, 847 S.W.2d 227, 229 (Tex. 1993) (appellate court confronting mootness cannot render decision on merits). Namely, our jurisdiction is now limited to the question of what should be done with a panel decision that became moot after it was issued to the public. For reasons that should be obvious, no court that I am aware of has ever suggested that disagreement with a

panel decision in a case that has ended is a proper basis for withdrawing the opinion. Were it otherwise, we could simply begin perusing the pages of the Southwest first, second, and third reporters to remove those pages we disapprove of. Once we conclude that we have lost plenary subject-matter jurisdiction, as we presumably have over those cases and this one alike, we cannot exercise subject-matter jurisdiction over the merits. Any attack on completed cases, like this one, must be collateral to its merits.

Accordingly, I do not believe the Court's authority to withdraw can turn upon a merits decision despite its own conclusion that it lacks subject-matter jurisdiction. Indeed, as the majority does not attempt to explain the basis for its determination that the public interest supports its decision to withdraw, I assume that it is not purporting to issue an advisory opinion on behalf of the Court. Instead, it is simply issuing a withdrawal decision without any substantive explanation. *See In re Columbia Med. Ctr.*, 290 S.W.3d 204, 211 (Tex. 2009) (orig. proceeding) ("We require courts to explain by written opinion their analyses . . . ."); *Lujan v. Houston Gen. Ins.*, 756 S.W.2d 295, 296 (Tex. 1988).

### B.     *The Withdrawal Decision is Unprecedented and Unsupported by Governing Law*

Putting aside its mysterious rationale, the majority's *sua sponte* decision to withdraw the panel opinion is unprecedented in this Court's long history, contrary to those decisions from this Court and others that inform our decision, and has the

result of exacerbating, rather than resolving, continuing uncertainty in an area of law badly in need of clarification.

The panel decision in this case was issued while this Court had jurisdiction to decide this matter. It decided, correctly in my view, and in keeping with long and unbroken precedent of the Texas Supreme Court, that an "election contest" includes not only disputes over the proper result of a completed election—something the Election Code describes separately as a "contest for office"—but also "every step of the process . . . from announcement of the candidate to the declaration of the result." *Dickson v. Strickland*, 265 S.W. 1012, 1018 (Tex. 1925). While that conclusion has been followed in this Court continuously since *Bickley v. Lands*, 288 S.W. 514, 515 (Tex. App.—Dallas 1926, no writ), and others even in the relatively brief time since the release of our panel's decision here,[1] it has not been universally recognized in other courts. *Contra Maddox v. Commr's Court of Palo Pinto Cty.*, 222 S.W.2d 475 (Tex. App.—Eastland 1949, no writ). That conclusion, adhered to by the panel that issued the opinion the majority now withdraws, results in the application of a series of important procedural safeguards meant to assure the voter's right to a fair election, including prohibitions against resolution by default or by a judge whose own election

---

[1] *See also Ellis v. Vanderslice*, 486 S.W.2d 155 (Tex. App.—Dallas 1972, no writ); *Polk v. Vance*, 244 S.W.2d 869, 872 (Tex. App.—Dallas 1951, no writ) ("Irregularities in the initiatory steps and regularity . . . can be urged only in an election contest."). Recently, our colleagues in Houston reconfirmed the same understanding. *Noteware v. Turner*, 576 S.W.3d 835, 840 (Tex. App.—Houston [1st Dist.] 2019, pet. denied) (applying *Rosario v. Townsend*, 9 S.W.3d 357, 361–62 (Tex. App.—Houston [14th Dist.] 1999, no pet.)).

will be animated by the same partisan forces that will play out at trial. *See* TEX. ELEC. CODE ANN. § 221.004. The questions at this point are (1) whether we have jurisdiction to make a merits determination in view of a settlement between the parties and (2) if not, whether we should exercise discretion to withdraw the panel opinion.

### 1. I Agree that this Case is Moot

As so often happens in these cases, the controversy has become moot as a result of the passage of time. I gather from the majority's decision that we have decided that the issue here does not qualify for continued internal debate on the merits as an *en banc* court. I myself would find that a close question as there is little doubt that the basic question raised in this case is certain to recur and has become the quintessential example of an issue that evades review. *See Tex. A & M Univ.-Kingsville v. Yarbrough*, 347 S.W.3d 289, 290 (Tex. 2011). Few modern appellate cases have addressed the evading review exception to mootness in the context of election contests and none to my knowledge have done so after (1) Texas advanced the date of its primary elections to early March and (2) the length of time to print and mail overseas ballots was shortened in 2009 under the Military and Overseas Voter Empowerment Act. *See* 52 U.S.C. § 20302. Indeed, I am not aware of a single appellate decision to have addressed the merits of a ballot issue since.

While the announcement of the primary candidates—and the start of any disputes over that ballot—still takes place in the December preceding the March

election, the ballots must be mailed to overseas voters not later than 45 days before the early March "super Tuesday" primary election. As we have warned repeatedly, the resulting duration leaves little time for the usual trial practice or the parties' concomitant right to appellate review. *In re Jones*, Nos. 05-18-00065-CV, 2018 WL 549531, at *2 (Tex. App.—Dallas Jan. 24, 2018, orig. proceeding) (mem. op.) (per curiam). Even in the rare case where the trial court is able to render a judgment after trial, operation of the judgment is automatically suspended by the filing of a notice of appeal, leading to troubling results like *De La Paz v. Gutierrez*, No. 13-19-00133-CV, 2019 WL 1891137 (Tex. App.—Corpus Christi–Edinburg Apr. 29, 2019, no pet.) (mem. op.) (trial court judgment that primary run-off election was product of fraud, though affirmed on merits, rendered moot by operation of automatic stay of Election Code § 232.016 during appeal).[2] As a result, we have reminded litigants of their ability to seek expedited review by-passing the trial court or even this Court as time runs down. *In re Jones*, 2018 WL 549531, at *2; ELEC. CODE § 273.061. As it stands, modern evading review precedent appears to foreclose any further merits resolution in this case or others like it. *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001).

### 2. *This Case Probably Does Not Fit the Evading Review Exception Because There is No Likelihood of Repetition Between These Parties*

---

[2] To be clear, I have no disagreement with either the reasoning or the result in that case. To the contrary, it seems compelled by the statute and the rules governing mootness as the Texas Supreme Court currently recognizes them. *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001).

As the *De La Paz* decision correctly observes, the evading review exception requires some indication that the same controversy is likely to arise not just *as to someone* who will be before the court in the future, but the same two parties before it in the pending case. 2019 WL 1891137, at *4 (citing *Yarbrough*, 347 S.W.3d at 290; *Lara*, 52 S.W.3d at 184)). The majority must have come to the same result in deciding to abandon the *en banc* proceedings based on the settlement. And, while I think it is certain that we will have future cases raising the question of which rules apply (i.e., whether these pre-election controversies are "election contests"), and, as we have repeatedly warned, they will evade meaningful review, I believe further development of the question in this case would require clarification from the Texas Supreme Court.

I will observe two implications of this result. The first concerns the role of election law—indeed the rule of law at all—in our elections. Agreeing as I do with *De La Paz*, and cases warning of the need to permit time for review of election contests by appellate courts, we are left with a set of election laws that either: (1) are practically unenforceable because the compressed timeframe makes trial and appeal in these cases impossible and mootness virtually certain; or (2) these laws can only be practically enforced—to the extent they do not require factual development and discovery—by direct mandamus to the supreme court as permitted by the Election

Code.[3]   Second, the fact that this case is beyond the reach of continued review because there is no likelihood of a future like controversy between these two parties ought to resolve the question of what should be done with the panel decision under standards governing that decision.

### 3.   *The Panel Decision Has Already Issued, Has No Probability of Affecting Future Litigation Between These Same Parties, and Is Therefore Not Properly Subject to Withdrawal*

As we routinely advise trial courts, an exercise of discretion requires a decision that is at least tied to guiding rules and principles.  *Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex. 1996); Hall & Anderson*, Standards of Review in Texas*, 50 ST. MARY'S L. REV. 1099, 1115–17 (2019).  That is to say, a court is obliged not simply to enter a ruling where the decision is discretionary, but to actually exercise discretion informed by the governing standards.  *E.g., United States v. Campo*, 140 F.3d 415, 418 (2d Cir. 1998).  Unlike trial courts, we are obliged not only to adhere to the relevant guidelines, but to show that a decision is anchored to them.  *E.g.*, *In re Columbia Med. Ctr.*, 290 S.W.3d at 211.  For that reason, I will address that standard.

---

[3] Section 273.061 provides that:

> The supreme court or a court of appeals may issue a writ of mandamus to compel the performance of any duty imposed by law in connection with the holding of an election or a political party convention, regardless of whether the person responsible for performing the duty is a public officer.

ELEC. CODE § 273.061.

There is no question that our rules provide us with discretion to withdraw an opinion from publication. TEX. R. APP. P. 42.1(c). But, as with any judicial decision, discretionary or otherwise, we are obliged to render a decision grounded in the principles that inform it. As noted above, a disagreement with the merits of a decision after we have lost jurisdiction is a decision on the merits and has thus never been suggested as a basis for a discretionary withdrawal decision under Rule 42.1(c), and is not indicated as the majority's rationale underlying its invocation of the "public interest."

Litigants have been dying, settling, and otherwise presenting us with moot controversies since this Court was created in 1893. Our jurisprudence on this issue nevertheless consists of the single, colorful panel opinion in *Singleton v. Pennington*, 568 S.W.2d 382 (Tex. App.—Dallas 1978, no writ), *rev'd on other grounds*, 606 S.W.2d 682 (Tex. 1980).[4] While the court noted that it could withdraw the panel opinion, that prospect "came too late"—as "like the writing of Omar Khayyam's moving finger, it cannot be blotted out." *Id.* at 384; *see also Public Citizen v. Third Court of Appeals*, 846 S.W.2d 284, 285 (Tex. 1993) (Doggett, J., concurring) ("A settlement thus does not automatically require the vacating of a court of appeals' opinion . . . ."). Our panel opinion in this case issued on December 17, 2018, more than one year ago. Since then, the opinion has been cited in at least one legal treatise,

---

[4] While the court also proceeded to issue its panel rehearing opinion, Texas Supreme Court precedent has developed more directly on that point and, as I understand it, has caused us to conclude that we can no longer issue an opinion on the merits. *Lara*, 52 S.W.3d at 184.

*see* Kim J. Askew, *Legal Issues*, 2 TEX. PRAC. GUIDE CIVIL PRETRIAL § 11:11 (September 2019 Update), and by other parties in their briefing before this Court and the Texas Supreme Court.

Additionally, *Singleton* directs us to take cognizance of the fact that the matter here is one of public interest as a reason to maintain, not withdraw, our precedent. 568 S.W.2d at 384 (concluding case plaintiff requested dismissed over defendant's objection addressed matter of public interest such that withdrawal of opinion inappropriate); *see also City of Pasadena v. State ex rel. City of Houston*, 442 S.W.2d 325, 331 (Tex. 1969) (overruling motion to dismiss and withdraw opinion because case "concerns the public interest" and "is a matter of public concern"). "Our courts are endowed with a public purpose—they do not sit merely as private tribunals to resolve private disputes." *Houston Cable TV, Inc. v. Inwood W. Civic Ass'n*, 860 S.W.2d 72, 73 (Tex. 1993). While it is unlikely that these same parties will be faced again with a similar dispute, the underlying issue they raise has been raised before and will continue to arise in future elections, as I note above. The public interest thus favors leaving our panel decision in place.

While a court sitting *en banc* might announce a different standard, I am not aware of any case in any Texas appellate court where a panel opinion was vacated without request after it issued and contrary to the discretion of the panel that issued it. Indeed, I am not aware of any Texas appellate court sitting *en banc* doing the same.

–10–

The federal standards governing disposition of a panel opinion issued before a case becomes moot are more fully developed than our standards, but are fully in keeping with *Singleton.* The federal system recognizes two basic mootness postures: "mootness on the way here" and mootness after release of an opinion. *E.g.*, *United States v. Payton*, 593 F.3d 881, 884 (9th Cir. 2010); *Bastien v. Office of Senator Ben Nighthorse Campbell*, 409 F.3d 1234, 1235 (10th Cir. 2005); *Armster v. U.S. Dist. Court for Cent. Dist. of Cal.*, 806 F.2d 1347, 1355 (9th Cir. 1986). Where a case becomes moot after a decision has issued, the argument for withdrawal is at its weakest. *See Armster*, 806 F.2d at 1355 ("There is a significant difference between a request to dismiss a case or proceeding for mootness prior to the time an appellate court has rendered its decision on the merits and a request made after that time."); *see also Humphreys v. Drug Enf't Admin.*, 105 F.3d 112, 116 (3d Cir. 1996) (concluding balancing of public policies suggested allowing decision to stand).

With respect to either posture, the Supreme Court has recognized, as Texas courts have generally, that disposition of a lower court opinion is a discretionary matter that carries two competing implications. On the one hand, there is the public interest in *stare decisis*, which is greater as one moves forward through the courts and militates against withdrawal.[5] On the other hand, cases are primarily of import to the parties themselves and vacatur of a lower court opinion is generally permitted

---

[5] This distinction is recognized in the Texas rules, which allow the parties explicitly to barter away a trial court judgment that has no stare decisis implications as part of a settlement but denies them that power as to an appellate opinion. TEX. R. APP. P. 42.1.

to clear the way for further litigation between them where they ask to do so. *See Comments: Disposition of Moot Cases by the United States Supreme Court*, 23 U. CHI. L. REV. 77, 78 (1955). As this case presents no prospect of repetition between these parties, there would be no private interest to weigh even if we were dealing with the decision to vacate a lower court decision, rather than one of our own after it has already issued. *See U.S. Bancorp. Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 26–27 (1994) (noting public interest requires demands of orderly procedure to be honored when they can and noting that withdrawing opinions as policy or rule would encourage parties to manipulate judicial system). Accordingly, the only interests at stake are the public ones identified in *Singleton* and like cases in the state and federal systems that point in the opposite direction of the Court's withdrawal decision.

For the reasons set forth above, I dissent from the decision of this Court sitting *en banc* to withdraw a panel opinion in which the case became "moot" after its issuance.

## II.

Having disagreed with the majority's decision to withdraw the panel opinion based on the public interest, I will now address the merits as they are developed in the separate concurring opinion that appears to inform that decision.[6]

---

[6] To be clear, the author of the concurring opinion is fully within his rights and authority to issue the opinion despite this case being moot, so long as the opinion itself is recognized for what it is. Like mine

Title 14 of the Election Code includes a number of important introductory provisions meant to protect voters from a result achieved by default judgment, by mootness brought on by legislative continuance or need for a jury trial, or a decision by a judge who owes his bench to the same local elective political forces playing out in the case before him. *See* TEX. ELEC. CODE ANN. §§ 221.002–.004. The applicability of those protections turns on the question of whether the case fits within the title "Election Contests."

I respectfully disagree with the concurrence's construction of the Texas Election Code as limiting the meaning of "election contests" to disputes over the outcome of an election and after the election day, because: the Texas Supreme Court has long held that an "election contest" includes all steps leading up to the election, and Title 14 of the Election Code, entitled "Election Contests," contains its own "applicability" provisions, which should control any question of its application that make the Title applicable to the full reach of the Code, including to injunctive and declaratory actions in district court, regardless of when they are filed. *See* ELEC. CODE §§ 221.001–243.013; *Dickson*, 265 S.W. at 1018.

---

that opinion can constitute nothing but *obiter dicta* at this stage. Of course, *dicta* is often useful to judges and panels in future cases, particularly those that must be developed and decided on compressed time frames. Of course, whether it is so depends on the degree "it contains a persuasive analysis." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1533 n.7 (11th Cir. 1997) (quoting *McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1077 (11th Cir.1996)). I leave the reader to decide whether either of our efforts have that effect. Any attempt, however, to convert either decision into a controlling decision of the Court would move us beyond the realm of officious, but well intended rambling into an illicit advisory opinion.

As I understand it, the concurrence would not challenge a party's ability, *after* election day, to bring an "election contest," challenging the steps preceding the election, though most will be moot by that point. I assume, then, that the concurrence would also allow a party to bring an injunctive or declaratory action while the issue is still ripe for decision, but concludes that such a lawsuit was not understood as being within the meaning of "election contest" as the legislature used the term, though it is identical in posture to the pre-election controversy in *Dickson* and its reading of the constitution's election contest provisions. While the concurrence correctly notes the timing provisions in a sub-provision of Title 14 governing so-called "Contests for Office," no one involved with this case has ever suggested that this case involves a "contest for office" or explained why a facially inapplicable subchapter would reach backwards to control the application of the broader Title or overwrite the "applicability" provisions they contain. As that construction appears to conflict with the decision of a superior court, in addition to the statutory text, I will begin there.

### A. The Legislature Was More Than Aware of the Settled Meaning of the Term "Election Contest" When it Enacted Title 14

The question in *Dickson* was whether the constitution's use of the undefined term "contested election" had the natural effect of including injunctive and declaratory disputes over the entitlement to appear on the ballot or simply suits filed

after the election to challenge the result. The answer from the Texas Supreme Court was clear:

> The subject matter is everything which can legally be embraced in the phrase "contested elections." Such a contest may embrace every part of the *"process"* . . . for the reason that an *"election"* which may be contested is not merely the acts of voting, **but every step regulated by law, from the announcement of the candidate to the declaration of the result.**

*Id.* at 1018 (emphasis in original and added). That holding remains binding today and lower courts are not empowered to declare binding precedents stale or moth-eaten to the point of being irrelevant to their analysis. *Agostini v. Felton*, 521 U.S. 203, 237–38 (1997) (courts of appeal should "follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions"); *Tooke v. City of Mexia*, 197 S.W.3d 325, 339 n.61 (Tex. 2006).

Unsurprisingly, then, the overwhelming majority view among Texas appellate decisions acknowledging the Texas Supreme Court's holding in *Dickson*, including the panel decision in this case, holds the term "election contest" as used in the Election Code title "Election Contest" includes actions challenging any step of the process by which the election is conducted. *E.g.*, *Cohen v. Clear Lake City Water Auth.*, 687 S.W.2d 406, 408 (Tex. App.—Houston [14th Dist.] 1985, no writ); *Roberts v. Brownsboro Indep. Sch. Dist.*, 575 S.W.2d 371 (Tex. App.—Tyler 1978, writ dism'd); *Kennedy v. Burnet Indep. Sch. Dist.*, 474 S.W.2d 742 (Tex. App.—Austin 1971, no writ); *Weinberg v. Molder*, 312 S.W.2d 393 (Tex. App.—Waco

1958, writ ref'd n.r.e.); *Rawson v. Brownsboro Indep. Sch. Dist.*, 263 S.W.2d 578 (Tex. App.—Dallas 1953, writ ref'd n.r.e.); *Turner v. Lewie*, 201 S.W.2d 86 (Tex. App.—Fort Worth 1947, writ dism'd).

While *Dickson* considered the question as a constitutional matter, this majority view is well grounded. We presume that when the legislature uses a term in a statute, without offering a separate definition of that term, it intends for it to have the same meaning that has been supplied by earlier decisions of the Texas Supreme Court. *In re Pirelli Tire, L.L.C.*, 247 S.W.3d 670, 677 (Tex. 2007) (legislature is presumed to act with knowledge of governing law and to embrace pre-existing definitions). If the question here is whether the legislature understood an "election contest" to include disputes over the "process" of the election as well as "the declaration of the result"—and it is—the Texas Supreme Court's opinion in *Dickson* speaking directly and conclusively to the question *before*[7] the legislature's use of the term without elaboration or definition is,[8] in fact, the best judicial evidence

---

[7] The concurrence criticizes me for citing Texas Supreme Court authority because it *predates* the enactment of the current Code. But that is precisely the point. As noted, we presume that the legislature is aware of the supreme court's construction of a term of art when it enacts a statute, like the current Election Code, that employs the same term without a separate definition.

[8] For the same reason, I avoid the debate as between other, conflicting post-enactment decisions in the lower courts addressing the issue before us. First, because they come after the enactment they tell us nothing directly about how the legislature would have understood the term "election contest" at the time. Second, because this Court was sitting *en banc*, the only precedent we ought to concern ourselves with is that of the Texas Supreme Court. Other authorities are helpful insofar as they offer insights that would help us to predict how that court would decide this issue. Only *Dickson* does so, and it does so directly.

of that intent.[9] Legislative knowledge of a judicial decision is far more likely where: (1) the court's construction is longstanding and unchallenged,[10] as it is here;[11] and (2) the resulting statute uses a term whose meaning has been settled as a matter of constitutional law.

The notion that an "election contest" today means one thing under the Texas Constitution and something totally different in the Election Code is difficult enough to fathom. But, as detailed below, the concurrence would have the term's meaning bounce back and forth between not only the constitution and the Election Code, but within Title 14 of the Election Code itself.

## B.    The Legislature Has Answered the Applicability Question

Putting aside for the moment the significant question of why the legislature would have wanted to use a different meaning than the Supreme Court or why it would not want to protect voters from default judgments or local partisan influence in the decision of injunctive and declaratory relief in election disputes, Title 14 does

---

[9] Similarly, a statute assuring citizens protection from "double jeopardy" or assuring them "equal protection," without more, is presumably operating in harmony, and not in conflict with, the understanding of those concepts as set out in the state's own organic law and construed by its highest court. *E.g., Citizens Bank v. Alafabco*, 539 U.S. 52, 56 (2003); *Trono v. United States*, 199 U.S. 521, 529 (1905); *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 87 F. Supp. 3d 573, 598–99 (S.D.N.Y. 2015), *rev'd on other grounds,* 863 F.3d 96, 114 (2d Cir. 2017) ("It is reasonable to assume that, when Congress used the term "full faith and credit" in the ICSID enabling statute, it intended to adopt the familiar meaning of this term of art.").

[10] *Kennedy v. Hyde*, 682 S.W.2d 525, 529 (Tex. 1984); *Chakrabarty v. Ganguly*, 573 S.W.3d 413, 416 (Tex. App.—Dallas 2019, no pet.) (stressing presumed legislative awareness of longstanding interpretations of a terminal court).

[11] While lower courts may have recently divided over the meaning of the statute, none has ever challenged *Dickson* as controlling the constitutional question it decided.

not apply only to disputes in district courts. Indeed, it addresses the very same disputes addressed in *Dickson.* Under the subtitle C, "Contests in Other Tribunals," the legislature addressed "election contests" for the same constitutional executive offices addressed in article 4 section 3 of the Texas Constitution, and, in turn, *Dickson.* As the Texas Constitution has not been amended and the legislature lacks the power to reverse the Texas Supreme Court's interpretation of it,[12] an "election contest" in subtitle C of Title 14 must have the same meaning as *Dickson.*[13]

By the concurrence's reading, however, the term "election contest" as used by the legislature has a meaning that is not only somehow different from the same term as interpreted by the Texas Supreme Court under the Texas Constitution, but an elastic one. For purposes of the Texas Constitution, it unquestionably embraces pre-election disputes, under Title 14 of the Election Code, however, according to the concurrence, it moves back and forth from one subtitle to another silently changing as it goes.

The concurrence anchors its conclusion on the timing directives contained in Chapter 232 of Title 14—a *sub-chapter* governing, unsurprisingly, disputes over who has prevailed in a completed election—inferring that its applicability somehow reaches backward to constrain the rest of the Title in which it appears. As detailed

---

[12] U.S. CONST. art. IV, § 4 (requiring states to provide a republican form of government that adheres to separation of powers constraints).

[13] The legislature presumably has no more power than an inferior court to reject the supreme court's interpretation of the constitution. *See W. Orange Cove I.S.D. v. Alanis*, 107 S.W.3d 558, 563 (Tex. 2003) (citing *Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803)).

above, I believe that argument fails to account for the settled meaning of the term—"election contest"—which the entire Title encompasses. I also believe that the argument fails to account for—and indeed writes out of the statute—the explicit applicability provisions the legislature provided.

The Election Code begins by providing that "[t]his code applies to all general, special, and primary elections held in this state." ELEC. CODE § 1.002. Title 14 of the Code, "Election Contests," appears to cover the same broad ground, as its applicability provision speaks only to several specific exclusions not at issue here.

Sec. 221.001. APPLICABILITY OF TITLE.

This title does not apply to:

(1) a general or special election for the office of United States senator or United States representative;

(2) an election on a measure that is for advisory purposes only; or

(3) a presidential primary election.

*Id.* § 221.001.

The provisions including the protections at issue here appear in subtitles A (introductory provisions) and B (contests in district court). Chapter 231, including its disqualification of local judges, appears as the first Chapter under subtitle B and applies broadly to every election contest "of which the district court has jurisdiction." To my understanding, district courts have jurisdiction over declaratory

and injunctive proceedings, as well as the post-election "contests for office" addressed in Chapter 232.

As noted, Chapter 232 governing the timing of a "contest for office" is subsumed in both the broader Code and Title in which it appears, and thus, in keeping with the logic of its placement, can only narrow its applicability. The concurrence contends that the general provisions apply but are limited in their operation to the five special proceedings listed thereafter, and included in Title 14, namely Chapter 232 (contest for office), Chapter 233 (contest on measure), Chapter 241 (contest for state senator or representative), Chapter 242 (contest for constitutional executive office), and Chapter 243 (contest for presidential electors), skipping over chapter 231 (contests in district court). But that argument ignores that the legislature actually set out an "applicability" provision that does not purport to limit its operation as the concurrence suggests.[14]

### C. That This is Not a "Contest for Office" Does Not Control Whether It Is a Suit Relating to the Election Process or Whether Any Such a Suit Would Qualify as an Election Contest

No one would question whether a dispute over who won an election is a form of "election contest" and logically one that cannot be brought until after the election

---

[14] It is hardly unusual for the legislature to draft titles with broad, generally applicable standards, followed by more specific and detailed requirements applicable in more particularized settings. The constraints on county courts at law, for instance, convey and limit their powers generally in subchapter A of Chapter 25 of the Government Code, and then either expand or limit them with respect to particular courts in the subchapters that follow. No one would argue that the general provision is inoperable as to a county court at law because it is not among those subjected to more detailed treatment.

has occurred. Indeed, it is explicitly included in Title 14 of the Election Code under its own subtitle and chapter as a "contest for office." That, however, is not the question here, as no party contends that this suit involves a "contest for office." Instead, the question here is whether there are any other suits involving the process by which an election is conducted to which the rest of the Title—and its voter protection provisions would apply.

That Chapter 232, entitled "Contests for Office" stands on its own and uses a different descriptor than the "election contest" that defines the title in which it appears, suggests that there are "election contests" other than a "contest for office," or there would be no purpose for the separate chapter. *Helena Chem. Co. v. Wilins*, 47 S.W.3d 486, 493 (Tex. 2001) (statute must be read as a whole so as to give effect to all of its parts). And, regardless of the phraseology, the legislature made speculation over the Chapter's reach unnecessary as it supplied its own applicability provision. *See* ELEC. CODE § 232.001.

> Sec. 232.001. APPLICABILITY OF CHAPTER. This chapter applies to *a contest of an election* for nomination or election to a public office or an office of a political party.

*Id.* § 232.001 (emphasis added).

The highlighted language plainly confirms, as does the appended timing provision governing "contests for office," that the entire Chapter applies to a dispute over a completed election. Giving it that intended meaning, and assigning it to its intended sphere of operation, *i.e.*, only to disputes over canvassing of the election

–21–

returns, explains its separate placement, allows both terms to have meaning, reconciles the provision to the balance of the title in which it appears, and allows for pre-suit injunction proceedings to be subject to the provisions governing "election contests" as suggested by the supreme court in *Dickson*. The fact that an election contest governed by Chapter 232 (i.e., a contest for office) may not be filed "earlier than the day after election day" begs the question of whether it is also applicable to the balance of the chapters contained in Title 14 and, if so, why it would be included separately and given a different description rather than the "general provisions" that govern all election contests and not merely "contests for office"? *Compare id. with id.* § 221.001.

To be sure, the term "contest for office" is not defined in the Election Code. Neither is "election contest." The fact that they are used separately plainly implies, together with the placement of one as a subset of the other, that they were not regarded as synonymous.[15] *See Bridgestone/Firestone Inc. v. Glyn-Jones*, 878 S.W.2d 132, 134 (Tex. 1994). Speculation on that point is unnecessary, as both the Chapter and the applicability provisions at issue here speak for themselves. ELEC.

---

[15] It is possible, of course, that the legislature meant to use the terms "election contest" and "contest for office" synonymously (as the concurrence necessarily infers), simply spoke redundantly, and isolated the timing provision separately in Chapter 232 for no reason. I do not believe that is the proper assumption for several reasons. First, we should not assume that the legislature used the terms or created separate provisions for no reason. When the legislature uses different terms we should presume it intended different meanings, just as we should read the statute as a whole to give effect to all of its provisions. *Spradlin v. Jim Walter Homes, Inc.*, 34 S.W.3d 578, 580 (Tex. 2000). And, more directly, while the Election Code does not attempt to define either term, the Texas Supreme Court has supplied its understanding of the meaning of the broader, controlling term: "election contest," which the legislature itself embraced in the same title governing those same disputes.

CODE § 232.001.  The only question, then, would appear to be whether a pre-election suit for injunctive or declaratory relief over which the "district court has jurisdiction" cannot be an "election contest."  I see the text and the history heavily answering in the affirmative.

The only other basis offered for a contrary reading of these expressed applicability provisions is contained in section 221.003,[16] which does not purport to address the applicability of the Title or narrow its reach.  I will now turn to that section.

### D.    The Scope of Inquiry Provision Does Not Restrict the Application of the Title to Contests for Office Under Chapter 232

The only provision within Chapter 221's "general provisions" that is said to tie its operation to post-election canvassing controversies is section 221.003.  Bishop cited us to *part* of that section, urging that this description is consistent with the timing provisions governing contests for office.  Indeed, it is.  That is hardly surprising as many, if not most, election contests will fit that description.  Bishop excluded from his reference paragraph (c) of that section, which states: "This section does not limit a provision of this code or another statute expanding the scope of

---

[16] The concurrence also points to authorities confirming that an "election contest" is a "special proceeding" but does not explain how that appellation aids its construction.  I agree that an election contest is a special proceeding.  What makes it special are the rules laid out above that preclude stalling by legislative continuance, require local judicial recusal, and compel us to expedite our decision on appeal, among other things.

inquiry in an election contest." The legislature was presumably aware of its own provision later in the Election Code:

> Sec. 273.081. INJUNCTION. A person who is being harmed *or is in danger of being harmed* by a violation or threatened violation of this code is entitled to appropriate injunctive relief to prevent the violation from continuing or occurring.

*Id.* § 273.081 (emphasis added).

As that provision and the Declaratory Judgment Act both plainly contemplate litigation in a district court—as the legislature expected in Chapters 221 and 231—there is no doubt that the legislature would have contemplated that such actions would be brought as part of an election contest.

## CONCLUSION

The legislature has regulated elections comprehensively in an effort to protect the rights of Texans to a meaningful vote. These provisions include a host of pre-election rules that have potentially massive effects on the outcome of a race. A candidate is generally required, for instance, to use his or her own name on the ballot in order to avoid efforts to confuse voters or manipulate the result. *Id.* § 52.031(c). Local party officials are required to place names on the primary ballot by random drawing, not by favoritism. *Id.* § 172.082(a). And, as in this case and *Dickson*, the entitlement even to appear on the ballot is subject to detailed requirements that may result—fairly or not—in removing a candidate from the ballot altogether. *Id.*

§ 172.021. All of these provisions give rise to the potential for litigation before the election with material or even controlling effect on its outcome.

The legislature has acted to regulate all such contests using plain, broad applicability provisions and to provide procedural protections just as, if not more, critical to protecting voters' rights as the substance. Because all of those disputes will usually be ripe for resolution *only* before election day, they are not a "contest for office" or, on that account, an "election contest" in the concurrence's view. None would therefore be subject to the provisions in Title 14 that foreclose resort to legislative continuance,[17] resolution by default judgment,[18] require expedited appellate review,[19] or direct recusal by the local judge who may be subject to the same partisan pressures that animate the controversy between the parties.

The panel opinion in this case adhered to supreme court precedent, the plain language of the statute and prior panel precedent from this Court in finding these important protections to be applicable to all election contests in district courts. For reasons that remain undeveloped, a majority of the Court has, for the first time in its history, reached backward to vacate that decision on account of subsequent mootness and without any request from the parties. As mootness appears to be a constant feature in these cases, I trust litigants who are concerned about the substantive law

---

[17] ELEC. CODE § 231.003.

[18] *Id.* § 221.014

[19] *Id.* § 231.009.

and the procedural protections at play here will take the next such case directly to the supreme court so that we might have a more definitive answer. As this Court has lost jurisdiction over this case and withdrawn the panel opinion, our precedent is as it was before.[20]

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

Bridges and Evans, J.J., join in this dissenting opinion

181333DF.P05

---

[20] *See supra* p.4 & n.1.